[Civ. No. 2774.  First  Appellate  District,  Division  Two.—June  23, 1919.]

## PACIFIC WESTERN COMMERCIAL COMPANY (a Corporation), Appellant, v. WESTERN WHOLESALE DRUG COMPANY (a Corporation), Respondent.

[1] SALES—BREACH OF WARRANTY AS TO PURITY—NOTICE OF DEFECT —EVIDENCE.—In this action to recover the purchase price of certain potassium carbonate, the defendant having rejected the goods because of breach of warranty as to purity, the correspondence between the parties proved that defendant gave plaintiff prompt notice of the defect in the material purchased, that the objections made by the defendant were sufficiently definite to cause plaintiff's assignor to believe that the basis of objection was the failure to meet the required percentage of purity as covered by the warranty, and that the subsequent acts of defendant did not indicate a waiver by defendant of the breach thereof.

[2] ID.—RESALE OF GOODS—WAIVER OF BREACH.—A breach of such a warranty is not waived by a resale of the goods where such resale is made prior to any opportunity being afforded the purchaser to inspect the goods, the whole arrangement being contingent upon the warranty of purity, and the proposed resale is not consummated on account of the breach of such warranty.

[3] ID. — DELIVERY OF GOODS NOT AS WARRANTED — RESCISSION — TENDER.—Where the goods delivered by the seller are not as warranted and, therefore, the buyer refuses to accept the same, it is not necessary for the buyer to rescind the contract and make a tender of the return of the goods.  There is no completed contract to be rescinded.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

Alfred B. Weiler for Appellant.

Lloyd W. Moultrie and Corbet & Selby for Respondent.

HAVEN, J.—In this action plaintiff sued as the assignee of one C. R. Haley to recover from defendant the purchase

---

3. Remedy of purchaser on default of one who sells with particular description of kind or quality, note, 35 L. R. A. (N. S.) 291.

price of certain potassium carbonate alleged in the first count of the complaint to have been sold and delivered to defendant, and in the second count to have been bargained and sold to said defendant. The cause was tried upon an agreed statement of facts. The trial court sustained the defense of a breach by the plaintiff's assignor of an express warranty that the material sold should be at least ninety-five per cent pure. The essential facts upon which the judgment for defendant was based appear in the following findings of the trial court, which are supported by the admitted facts and justifiable inferences therefrom:

"That by and in said contract of sale, and as a condition thereof, it was expressly warranted by said C. R. Haley that said potassium carbonate was in quality of ninety-five per cent (95%), or over, pure; that it was agreed and intended by the said parties that such warranty should be, and the same was, a condition to the purchase thereof by the defendant; that by and in said contract, it was further warranted, as a condition thereof, that said five (5) tons of potassium carbonate would be shipped to and ready for delivery by the defendant to its customers during the months of April and May, 1916. That in purported accordance with the terms and conditions of said contract aforesaid, said C. R. Haley, on or about May 5, 1916, shipped to the order of defendant five (5) tons of potassium carbonate. That said five (5) tons of potassium carbonate, so shipped by said C. R. Haley, contrary to and in breach of the warranty of said C. R. Haley, and the condition aforesaid, was not of the quality of ninety-five per cent (95%), or over, pure, but was of a quality of less than ninety-five per cent (95%) pure, being only ninety-three per cent (93%) pure, and no more. That immediately upon discovering that said goods were not of the quality so warranted, as aforesaid, said defendant rejected said goods, and rescinded said contract of sale, and notified said C. R. Haley of such rejection, and rescission, and said goods were held subject to the order of C. R. Haley, as rejected, until said goods were disposed of; that said goods were never accepted by defendant, and said goods were not ninety-five per cent (95%) pure potassium carbonate."

Appellant admits the breach of warranty as found by the court, but contends that such breach was not a complete defense to the action, for the reason that respondent elected

not to reject the goods but to rely on a setoff for damages as its sole defense, as to the amount of which damages no evidence was offered. This election is alleged to have resulted from (1) the failure of the defendant to give prompt notice of the defect in the goods; (2) the making of objections to the quality of the goods upon grounds other than the breach of warranty; (3) the use of the goods by the defendant; (4) the offer of the defendant to make an equitable and proper adjustment of the dispute between the parties; and (5) an attempt to rescind the contract, which was ineffectual by reason of failure to make a tender of a return of the goods.

The evidence upon which the case was submitted consists of a voluminous correspondence between the parties covering the terms of the contract between them and the positions taken on each side with regard to the breach of the warranty and the consequences thereof. An attempt to summarize such correspondence would extend this opinion beyond reasonable limits. It is sufficient to state that the following facts were established: After purchase of the goods, and before delivery of a sample or any other portion thereof, defendant contracted to sell the bulk of its purchase to parties in Philadelphia. In its contract of resale, defendant warranted that the chemical sold should not contain over two per cent potassium chloride or over one-tenth per cent of insoluble matter. Under instructions of defendant, the bulk of the material purchased was shipped to its purchasers in Philadelphia, and one hundred pounds to the defendant itself, at Los Angeles. Upon receipt of this last shipment the defendant promptly notified plaintiff's assignor that it found that the quality of the goods did not correspond with the sample and analysis previously sent. During the next month an extensive correspondence was carried on between the defendant and plaintiff's assignor with regard to the quality of the chemical shipped, it appearing that different analyses made thereon did not agree. During this correspondence plaintiff's assignor attempted to collect the purchase price upon a draft drawn against defendant. Defendant refused to pay said draft, and the delivery of the goods to its purchaser was held up. Upon defendant's suggestion, it was subsequently agreed that the chemical should be delivered to its purchasers in

Philadelphia for the purpose of examination by them. In making this suggestion defendant wrote: "It appears to us that it would be better to have the goods delivered, and then make the proper adjustment after they have been received and tested by our parties. You can appreciate that we are not invoicing this lot until we have their report on the goods." Upon examination by the Philadelphia purchasers, they refused to accept the shipment upon the ground that the material contained a larger quantity of insoluble matter than warranted by defendant.

Appellant claims that the warranty by defendant to its purchasers was a different one than made by plaintiff's assignor to the defendant. It appears, however, that, while the rejection in Philadelphia was based upon an analysis which showed that the insoluble matter and other foreign contents were so large as to constitute a breach of defendant's warranty to its customers upon resale, they were also sufficient to reduce the pure potassium carbonate below ninety-five per cent as warranted by plaintiff's assignor. Defendant's final rejection of the goods followed promptly after this test of the material in Philadelphia. Until that time the matter had been held in abeyance by consent of both parties. [1] Taken as a whole, the correspondence proves that defendant gave plaintiff prompt notice of the defect in the material purchased; that the objections made by it were sufficiently definite to cause plaintiff's assignor to believe that the basis of objection was the failure to meet the required percentage of purity as covered by his warranty; and that the subsequent acts of defendant did not indicate a waiver by defendant of the breach thereof.

[2] The contention that defendant waived the breach of the warranty by reason of the use of the goods is based upon the admitted fact that it contracted to resell the same to its Philadelphia customers. It is argued that that fact was an exercise of ownership and implied that the buyer had assumed title to the property. It appears, however, that such contract of resale was made prior to any opportunity being afforded to defendant to inspect the goods; that the whole arrangement was contingent upon the fulfillment by plaintiff's assignor of his warranty of purity to the extent, at least, of enabling defendant to meet its warranty to its customers; and, further, that the proposed re-

sale was not consummated on account of breach of such warranty. Under these circumstances, it cannot be said that the defendant exercised such dominion over the property as to evidence acceptance thereof. Some contention is also made that an attempt to sell the property, made by the defendant at a later time, indicated an acceptance. This effort to sell was made by defendant after it had notified plaintiff's assignor of its rejection of the goods, and immediate notice thereof was communicated to Mr. Haley, said assignor. In acknowledging receipt of such notice, he thanked the defendant for its kindness in the matter. The reasonable construction of the letters upon this subject is that this sale was attempted by defendant for the benefit of plaintiff, and in order to minimize its loss.

The offer of defendant to make an equitable and proper adjustment of the misunderstanding between the parties, relied upon by appellant as an additional circumstance proving the election by the defendant, does not appear to have been a consideration for the delivery of the goods, nor to have been relied upon by Haley. Throughout the correspondence, the question in dispute was the purity of the goods. The suggestion of an equitable adjustment was not made in such a manner as to indicate a waiver by defendant of its right to stand upon the warranty.

[3] The further contention as to the attempted rescission of the contract and the failure to make a tender of the return of the goods need not be discussed, for the reason that it clearly appears that the sale was never consummated. Hence there was no completed contract to be rescinded. Plaintiff did not deliver the character of goods which it agreed to sell. Defendant was justified in refusing to accept the goods, and having done so, no further obligation rested upon it. (Mechem on Sales, sec. 1402.) A buyer cannot "be required to accept and pay for a thing different from that which he contracted to receive." (Mechem on Sales, sec. 1155.) "If the sale is of a described article, the tender of an article answering the description is a condition precedent to the purchaser's liability; and if this condition be not performed, the purchaser is entitled to reject the article, or, if he has paid for it, to recover the price as money had and received for his use." (Benjamin on Sales, sec. 600.) The conclusion of the trial court that the breach of

warranty by plaintiff's assignor was a complete defense to the action was fully warranted.

The judgment is affirmed.

Langdon, P. J., and Brittain, J., concurred.