[Civ. No. 5216. Third Appellate District.—March 29, 1935.]

LILLIAN ISHAM et al., Appellants, v. JOSEPH E. TRIMBLE, Respondent.

A. B. Reynolds and J. Francis O'Shea for Appellants.

Gerald M. Desmond and Stanley W. Reckers for Respondent.

PAULSEN, J., *pro tem.*—This action was commenced by the heirs at law of Walden L. Isham, deceased, to recover damages for his death which resulted from the collision of two automobiles. The case was tried by the court sitting without a jury. After finding that the negligence of the defendant was a proximate cause of the accident the court also found that Isham was guilty of contributory negligence and accordingly rendered judgment for the defendant. Plaintiffs have appealed from the judgment. Two points are presented: First, that the evidence is insufficient to support the finding of contributory negligence; and second, that even if such finding was justified, the court should have found, as a matter of law, that the defendant had the last clear chance to avoid the collision.

The accident occurred on the Auburn Boulevard shortly after 2 o'clock A. M., December 17, 1933. Some distance north of Sacramento, Auburn Boulevard is intersected by the North Sacramento levee and proceeds thence northeasterly and in a straight line through and beyond the Western Pacific subway. The mid-point of the subway is two hundred and forty feet from the levee. Between these two points the highway is divided into three lanes and the lanes are marked with the usual white lines. Throughout the trial of the case the lane along the northwesterly edge of the highway was referred to as the "left-hand" lane and for convenience it will be so designated herein.

At the time of the accident, Isham was driving a Buick coupe from Sacramento toward North Sacramento. Occupying the single seat with him were three companions: William Frees, Marshall Brousliman and Ruth Sheldrick. He had followed a truck for a considerable distance before reaching the levee. The truck was making twenty-five miles an hour and both were driving in the right-hand lane. Respondent was approaching from the opposite direction and was somewhere near the subway when Isham passed over the

levee. While there is some dispute as to respondent's exact position in the lanes as he passed under the subway, it is undisputed that he was either wholly or partly within the middle lane as he drove from the subway to the point of collision and that he was traveling between fifty and sixty miles an hour. There were no cars in the left-hand lane to prevent him from driving therein. Shortly after leaving the levee, Isham turned toward the middle lane to pass the truck and thereafter the left front wheel of his car collided violently with the left rear wheel of respondent's car.

█ At the trial no evidence whatever was presented by respondent and he was not called to the stand by appellants. But this did not require the trial court to accept appellant's theories; nor does it support their assertion that there was no conflict in the evidence. █ Substantial conflicts may, and often do, arise when all of the evidence is produced by one party and it is then the sole province of the jury to determine the questions in issue. (*Frazee* v. *Fox Film Corporation,* 45 Cal. App. 661 [188 Pac. 286].)

No useful purpose will be served by discussing all of the evidence and it may be conceded that there is evidence from which the court might have found the facts to be as stated by appellants. █ But there is also other substantial evidence from which it could, and did, reach very different conclusions. Apparently it is appellants' contention that the Isham car came abreast of the truck before respondent turned into the middle lane and that Isham had no opportunity to avoid the accident. They appear to draw this conclusion from certain testimony that "we coasted along with the truck". The truck driver testified that the accident occurred at the left rear corner of his truck; that he never saw the Isham car at his left. Frees testified in part as follows: "Q. Had you got alongside of the truck? A. Yes. Not clear up with it. Q. You mean up with it or past it? A. We just got part way up with it. Q. Was the front of your car alongside of the truck? A. About half way past the truck." There was other testimony bearing upon this point and the trial court heard each of the witnesses testify with reference to positions on the map. It may well have concluded that Isham saw respondent's car at the time he first started to turn out; that the front of his car was never far enough past the rear of the truck to prevent him from

turning back into the right-hand lane; and that as respondent was apparently unaware of his attempt to pass the truck and was driving straight at him at a high rate of speed, it was the part of a reasonably prudent man to drop back behind the truck.

Nor is the evidence such that the court should have concluded, as a matter of law, that Isham was justified in continuing in the middle lane at all. While Frees stated that respondent's car was in the left-hand lane when he first saw it, both Brousliman and Miss Sheldrick testified that they saw it as soon as Isham started to turn out to pass and at that time it was in the middle lane. Brousliman testified: "If you want to know what happened, I looked up and saw a blaze of light and the thing was coming for us." It is true that he also stated that the collision did not occur instantly, and there were other statements to the effect that "we coasted along with the truck". However, there was a conflict as to the exact place of the accident and when we consider the distances and speeds involved, it is at once apparent that the two cars would have traveled the distance between the subway and the levee in approximately two seconds and the time that elapsed after Isham saw respondent's car and started to slow down might have been much less.

■ Appellants contend, however, that if Frees was able to see respondent's car at a position in the left-hand lane when Isham first started to turn out, then we must indulge the presumption created by section 1963 of the Code of Civil Procedure that a man takes ordinary care of his own concerns, and therefore that Isham must have seen the car at that point also. The trial court was not required to believe Frees' testimony on this point. Moreover, in the light of the other testimony in the case, this presumption could not, at most, do more than create a conflict in the evidence, and the court was not bound to resolve the conflict in favor of the presumption. (*Smellie* v. *Southern Pacific Co.*, 212 Cal. 540 [299 Pac. 529].)

■ Appellants insist also that as the middle lane was for passing only and as no cars were in the left-hand lane, Isham had an absolute right to rely upon the assumption that respondent would obey the law and turn into the left-hand lane. "A vehicle shall be driven as nearly as is practicable entirely within the single lane and shall not be moved

from such lane until the driver has first ascertained that such movement can be made in safety." (Subd. b, sec. 123, California Vehicle Act.) "A motorist must at all times use due care to avoid colliding with another; he must be ever alert and watchful, so as not to place himself in danger, and while he may assume that others will exercise due care, he cannot for that reason omit any of the care which the law demands of him." (*Donat* v. *Dillon,* 192 Cal. 426 [221 Pac. 193]; *Barton* v. *Studebaker Corp. of America,* 46 Cal. App. 707 [189 Pac. 1025]; *Meyers* v. *Bradford,* 54 Cal. App. 157 [201 Pac. 471].) One who is not negligent is entitled to rely upon the presumption that others will exercise due care, so that it is not negligence to fail to anticipate danger which can come only from a violation of law or duty upon the part of another. But reliance upon this presumption does not excuse one who is himself negligent. (*Carroll* v. *Central Counties Gas Co.,* 74 Cal. App. 303 [240 Pac. 53]; see, also, *Holahan* v. *McGrew,* 111 Cal. App. 443 [295 Pac. 1059].) Isham was not entitled to rely upon the duty of respondent to obey the law unless he himself was free from negligence. It was his duty at all times to be alert and exercise reasonable precautions to avoid danger, to see that he could turn out in safety before he occupied the middle lane. Upon conflicting evidence, the court found against appellants on these issues and upon well settled principles, which require no citation of authority, this court is not at liberty to hold otherwise.

The contention that the evidence shows, as a matter of law, that respondent had the last clear chance to avoid the accident is without merit. In the comparatively recent case of *Girdner* v. *Union Oil Co.,* 216 Cal. 197 [13 Pac. (2d) 915], the Supreme Court, speaking of the doctrine of last clear chance, said: "The necessary elements, as deduced from the well-considered cases, may be stated in substance as follows: That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff

cannot escape from such situation, and has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure.'' We have shown above that there was substantial evidence to support the conclusion that Isham was never unaware of his danger or was never in a position from which it was physically impossible, with the exercise of ordinary care, to escape. Moreover, Isham's companions all testified that respondent drove straight toward them until almost the very instant of the impact. Brousliman stated: ''Just as he got to us he swung over, trying to get over to his side of the road. He must have spotted us then.'' And again: ''Just as he got right on top of us, just as we were going to crash it seemed like he jack-knifed his wheel.'' These statements, considered with the other evidence discussed above, warranted the implied finding that respondent did not actually become aware of Isham's danger in time to avoid the accident. The fact that respondent should have seen Isham's position of danger, if such was the fact, would not be equivalent to *actual* knowledge of it. ''It is a well-settled rule in this state that this doctrine is only applicable to a defendant who actually perceived the predicament and danger of a plaintiff in time to have avoided the accident by the exercise of due diligence. A defendant cannot be held liable upon the theory that he would have discovered the peril of the other but for remissness on his part.'' (*New York L. Oil Co.* v. *United Railroads,* 191 Cal. 96 [215 Pac. 72, 74], and cases there cited.)

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 27, 1935.