[Civ. No. 25606. Second Dist., Div. Two. June 11, 1962.]

T. V. WIRE PRODUCTS, Plaintiff and Appellant, v. OSIPOW ELECTRIC SUPPLY COMPANY et al., Defendants and Respondents.

Jesse Blattel for Plaintiff and Appellant.

Aaronson & Shapero for Defendants and Respondents.

FOX, P. J.—This is an action to recover for goods sold and delivered pursuant to a written contract. Plaintiff appeals from a judgment in favor of the defendants.

Plaintiff, a corporation engaged in the manufacture and sale of insulated wire, entered into an agreement in writing on February 13, 1958, with defendant partnership, Osipow Electric Supply Company, composed of defendants M. B. Tyson and Les Bloomfield, whereby plaintiff agreed to manufacture and sell and defendants agreed to purchase 600,000 feet of copper wire. The contract consists of two documents:
(1) Offer.

> "Quotation for Osipow Elec. Supply
> "February 11, 1958

"600,000 feet 2 conductor twisted shielded at a cost of $16.00 per M'
"each conductor, 7 strands 30 tinned copper
"insulation, .010 PVC
"each conductor size, .050
"color coded
"twisted 2½" lay
"Shielding, 85% tinned copper close braid

"o.d. over shield approximately .100

"*Sample submitted*

"Put up on master spools, approximately 5M' per spool.

"Delivery: partial delivery 30 days after receipt of order, total 90 days.  f.o.b. Burbank, California.

"Terms. 1% 10th prox.

> "TEVCO INSULATED WIRE
> "Peter S. Wald, President." (Emphasis added.)

(2)  Acceptance.

> "Purchase Order   . . .
> "Osipow Electric Supply Co.   Order Number 29097

"477-501 E. 3rd St.      . . .      Los Angeles 13, Calif.
"Date   13 Feb   1958

"To    TEVCO Ins. Wire Co
"Address   108 Prospect Ave      Ship Via   Burbank

"600 M ft # 22 shielded twisted pair, copper stranded tinned with close braid tinned copper shield

> "*As per sample submitted*   Cable shall be furnished in continuous lengths of 1000 ft on nonreturnable reels Each length per reel  $16\frac{00'}{M}$ ft

"Shipping schedule:

"126 M ft to be delivered within 2 calendar days after receipt of order and an additional 120 M each 30 calendar days for a period of 4 months

> "Ship to: C.A.A.
> 5651 W. Manchester
> Los Angeles

"Mark 458-2874

> "OSIPOW ELECTRIC SUPPLY Co.
> "By   Les Bloomfield" (Emphasis added.)

Pursuant to the terms of the contract, plaintiff manufactured a total of 201,000 feet of said wire and shipped 126,500 feet to defendants.  Thereafter, defendants cancelled the contract. Plaintiff alleged that it had performed all of the terms, covenants and conditions of the contract and that no part of the purchase price had been paid, although demand had been duly made.

Defendants admit the execution of the contract but contend that the wire ordered from the plaintiff was to be in accordance with a submitted sample having certain specifica-

tions which had been received by the defendants from the Civil Aeronautics Administration and submitted to various wire manufacturers, including plaintiff, for competitive bidding. These specifications were identified as Sequoia No. 1,000-22(7) S2.

Defendants assert that the plaintiff, after receiving the specifications, represented and warranted to defendants that they could produce a wire equal to Sequoia No. 1,000-22(7) S2. Plaintiff supplied defendants with a *sample of wire* which assertedly carried the same specifications and capacity as Sequoia No. 1,000-22(7) S2.

Relying on those representations, the defendants ordered 600,000 feet of the wire to be delivered to the Department of Commerce, Civil Aeronautics Administration. The wire was tested and was not equivalent to Sequoia No. 1,000-22(7) S2, in that the wire leaked voltage and shorted out when 500 volts of electricity were run through the same wire under test. Based on the alleged breach of warranty, and the resultant failure of the wire product to perform up to required standards, the defendants informed plaintiff that the wire was not as represented and the contract was cancelled.

The court found, *inter alia,* that the agreement for sale and purchase constituted a *sale by sample* and that the wire produced by plaintiff *did not conform* to that sample.

Plaintiff attacks these findings on the ground that they are unsupported by the evidence. ■■ The general rule to be applied when reviewing the sufficiency of the evidence is set out in *Overton* v. *Vita-Food Corp.,* 94 Cal.App.2d 367 [210 P.2d 757]. The court stated (p. 370): "[W]here the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom." (*Estate of Teel,* 25 Cal.2d 520, 526-527 [154 P.2d 384]; *Estate of Bristol,* 23 Cal.2d 221, 223-224 [143 P.2d 689]; *Standard Realty & Dev. Co.* v. *Ferrera,* 151 Cal.App.2d 514, 516 [311 P.2d 855]; 3 Witkin, Cal. Procedure, § 84, pp. 2245-2246.) "The critical word in the definition is 'substantial'; . . ." (*Estate of Teel, supra.*)

■ In *Estate of Bristol, supra,* the court stated (pp. 223-224): "Appellate courts, therefore, if there be any reasonable

doubt as to the sufficiency of the evidence to sustain a finding, should resolve that doubt in favor of the finding; and in searching the record and exploring the inferences which may arise from what is found there, to discover whether such doubt or conflict exists, the court should be realistic and practical.''

Applying the above principles, we cannot say findings that the transaction here involved constituted a sale by sample and that the bulk of the goods did not correspond with the sample in quality, are unsupported by substantial evidence.

The fact that this is a sale by sample is apparent on the face of the instruments set out *supra*. The order contains the expression ''sample submitted'' and in the acceptance we find the expression ''as sample submitted.'' Further, Mr. Wald, president of plaintiff corporation, testified that pursuant to a request from Bloomfield of Osipow Electric, plaintiff prepared a sample which was delivered to defendants along with a quotation. Bloomfield also testified that he asked Wald to prepare a sample; that he had a sample prepared and delivered to defendants. This testimony of Wald and Bloomfield, considered in connection with the references relative to submitting a sample contained in both the offer and acceptance, clearly supports the trial court's finding that this was a sale by sample.

The determination that the transaction constituted a sale by sample gives rise to the implied warranty contained in section 1736 of the Civil Code, where it is provided:

''In the case of a contract to sell or a sale by sample:

'' (a) There is an implied warranty that the bulk shall correspond with the sample in quality. . . .''

The trial court found that this implied warranty was breached in that the bulk did not conform to the sample. This finding is based on the following analysis of the evidence made by the court at the conclusion of the trial: the sample was submitted to the government in the ordinary course of the business; Mr. Marshak, Supervising Purchasing Agent of the Civil Aeronautics Administration, testified that when a sample is received it is examined, and, if the sample meets the specifications required in the bid, a contract is entered into; John R. Reed, Chief of the Electronic Section of the Civil Aeronautics Administration, testified that the sample was examined. Therefore, since the sample was examined and a contract was, in fact, subsequently made between the Civil Aeronautics Administration and defendants, it was reasonable

for the trial court to draw the inference therefrom that the sample submitted by plaintiff conformed to the required specifications.

Marshak further testified that the bulk "was not satisfactory, did not live up to specifications." Reed testified that the wire was "unsatisfactory"; "it showed excessive leakage" and some of the spools were "dead short." He further testified "any voltage placed on the wire regardless of what its voltage would be, would not be delivered at the other end of the wire."[1]

In addition, there were several letters written by Marshak to plaintiff which showed that the wire was not satisfactory. The first letter stated, *inter alia,* "It was subsequently determined that the wire did not meet a voltage test, as well as other specifications. On March 25, Mr. Wald agreed to take back all wire previously delivered and to deliver thirty-eight (38) spools of wire which met specifications." The original 38 spools of wire referred to in the above letter were picked up by plaintiff and 38 different spools subsequently delivered in their stead. A second letter written by Marshak to plaintiff showed that these spools were also unsatisfactory. That letter stated, "Samples of the thirty-eight (38) spools have been tested and they still fail to meet specifications."

. Therefore, since it is reasonable to infer that the sample did conform to the required specifications and since the above testimony of Reed and Marshak and the correspondence established that the bulk did not conform to these specifications, the trial court was amply justified in concluding that the bulk and the sample did not correspond in quality.[2]

---

[1]This showing that the bulk would not carry any voltage whatsoever and that it leaked excessively would also support the trial court's conclusion that plaintiff take nothing by this action on another theory, i.e., plaintiff breached the implied warranty set forth in Civil Code § 1736, subd. (c) which provides: "In the case of a contract to sell or a sale by sample: . . . (c) If the seller is a dealer in goods of that kind, there is an implied warranty that the goods shall be free from any defect rendering them unmerchantable which would not be apparent on reasonable examination of the sample." A wire that cannot carry any voltage and is subject to excessive leakage is very likely subject to a defect rendering it unmerchantable.

[2]The trial court's finding is further supported by contrasting Wald's testimony with the testimony of Reed. Wald, president of plaintiff corporation, testified that the sample was tested by plaintiff and that it would carry 200 volts. Reed testified that some of the wire would not carry any voltage whatsoever. Since the sample carried 200 volts and a portion of the bulk did not carry any voltage, it is apparent that the bulk did not conform to the sample.

■ "When there is substantial evidence or any inference to be drawn from the evidence to support the findings of the trial court, an appellate court will not make determinations of factual issues contrary to those made by the trier of fact. [Citations.]" (*Smith* v. *Bull*, 50 Cal.2d 294, 306 [325 P.2d 463]; *Ambriz* v. *Petrolane, Ltd.*, 49 Cal.2d 470, 477 [319 P.2d 1].) "In reviewing the evidence, all conflicts must be resolved in favor of the questioned findings and all reasonable inferences indulged in their support." (*Butler* v. *Nepple*, 54 Cal.2d 589, 597 [354 P.2d 239].)

. Furthermore, in order to recover on the contract, the plaintiff must show that he performed all conditions precedent. ■ "If the seller contracts to deliver goods like a sample, and the buyer refuses them, he cannot recover upon the contract without showing that the buyer is in default in refusing the goods, and this cannot be shown without proof that the goods correspond to the sample. The burden of proof, therefore, is upon the seller to establish that fact." (Williston on Sales (2d ed.), § 255, p. 514.)

"Plaintiff did not deliver the character of goods which it agreed to sell. Defendant was justified in refusing to accept the goods, and having done so, no further obligation rested upon it. (Mechem on Sales, § 1402.) A buyer cannot 'be required to accept and pay for a thing different from that which he contracted to receive.' (Mechem on Sales, § 1155.)" (*Pacific Western Commercial Co.* v. *Western Wholesale Drug Co.*, 41 Cal.App. 696, 700 [183 P. 287].)

While it is true that Wald testified that the wire conformed to the sample, "[t]he trial court . . . was not required to believe that . . . [his] testimony was true and accurate in every particular. In passing on the credibility of witnesses and the weight to be given their testimony, the trier of fact is entitled to consider their *interest in the result of the case,* their motives, the manner in which they testify, and the contradictions appearing in the evidence. [Citations.]" (Emphasis added.) (*Huth* v. *Katz*, 30 Cal.2d 605, 608-609 [184 P.2d 521].) Wald, as president of plaintiff corporation, had a great interest in the result of the case, and considering this, the trial court might very well conclude that plaintiff did not satisfy its burden to show that the bulk did correspond to the sample. .

Plaintiff contends, relying on the case of *El Zarape Tortilla Factory, Inc.* v. *Plant Food Corp.*, 90 Cal.App.2d 336 [203

P.2d 13], that an implied warranty cannot be shown by parol evidence. In the *El Zarape* case, a contract was entered into over the telephone which was followed by two documents. There was no showing on the documents that the contract was subject to any warranty and the appellate court held that it was error to allow parol evidence to establish facts which would give rise to a warranty. However, the instant case is easily distinguishable from the *El Zarape* case in that the writing itself discloses the transaction to be a sale by sample and the implied warranty attaches by operation of law (Civ. Code, § 1736).

Parol evidence was not admitted to change the contract or to modify its terms, but rather to explain the terms set forth in the contract, i.e., the specifications of the sample. ▮ As stated in *Shimmon* v. *Moore,* 104 Cal.App.2d 554 [232 P.2d 22], at page 559: "Where parol evidence explains and does not vary the written contract, it may be admitted." (*Beneficial Fire & Casualty Ins. Co.* v. *Kurt Hitke & Co.,* 46 Cal.2d 517, 524 [297 P.2d 428]; *Walsh* v. *Walsh,* 18 Cal.2d 439, 443 [116 P.2d 62]; *Green* v. *Sprague Ranches,* 170 Cal.App.2d 687, 692 [339 P.2d 607]; *Rivers* v. *Beadle,* 183 Cal.App.2d 691, 695 [7 Cal.Rptr. 170].)

Judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.