[Civ. No. 26107. Second Dist., Div. Two. Oct. 24, 1962.]

JOHN F. CURTIS, Plaintiff and Appellant, v. MARIT B. MENDENHALL, as Administratrix, etc., Defendant and Respondent.

William C. Hiscock for Plaintiff and Appellant.

James A. Poore for Defendant and Respondent.

FOX, P. J.—This is an action by plaintiff on an account stated arising out of the purchase of life insurance. Plaintiff appeals from an adverse judgment.

The defendant, Marit B. Mendenhall, is the administratrix[1] of the estate of Dr. Arthur J. Mendenhall, deceased. Several persons, including the decedent, had invested in a gambling casino (the Boulder Club) in Las Vegas, Nevada. Only one of the group, Ernest Amante, had any experience in this field and the investors, consequently, were concerned as to what would happen to their funds in the event of Amante's death. Decedent, on behalf of the investors, contacted plaintiff, an insurance agent, concerning an insurance policy on the life of Amante for the benefit of all the investors in the sum of

[1]Defendant is inadvertently referred to as "administrator" at several places throughout the clerk's transcript.

$250,000. Apparently to obviate certain problems in obtaining a Nevada license to operate the club, the license was issued solely in Amante's name.[2]

John Suckling, an attorney then representing plaintiff, testified that decedent came up with the suggestion that he (decedent) buy the insurance on the basis that decedent had made a loan to Amante, and after the insurance was issued, create a trust and assign the insurance policies to the trust with decedent as trustee. The policies were issued but never delivered to either decedent, the beneficiaries, or the insured. The trust, however, was subsequently executed and the assignment made.[3]

Plaintiff's secretary testified that the plaintiff paid the premium by having it charged to his (plaintiff's) account and that she prepared and mailed an original invoice for the sum of $3,106.79 and subsequently several duplicates to Dr. Mendenhall. She further stated that it is her duty to open all incoming mail in plaintiff's office and that she never saw any writing from decedent stating that he would not pay the amount of the invoice.[4] It is this invoice and the subsequent

---

[2]It appears that the Boulder Club was technically a sole proprietorship in Amante's name and decedent didn't want the fact that there were silent partners a matter of record. The difficulty in obtaining a policy on Amante's life was that it was not factually apparent that the investors had any insurable interest in the life of Amante and an insurance company will not issue a policy on the life of another without some kind of an insurable interest.

[3]Two policies were issued by the life insurance company—one for $225,000 and the other for $25,000. In both policies Amante was the named insured with his wife as beneficiary. It appears that only the $225,000 policy was assigned to the trust. It is interesting to note that the trust was drafted by plaintiff's attorney and the assignment was typed by his (plaintiff's) secretary.

[4]The factual picture can be better understood by referring to the following letter:

"December 26, 1957

"To Whom It May Concern:

"This statement will certify to the fact that I, and several of my associates, arranged for the purchase of $250,000 of life insurance on the life of Ernest Amante on March 21, 1956. This insurance was issued by the Massachusetts Mutual Life Insurance Company, Springfield, Massachusetts, in policies #2436150 and #2436151 with an annual premium of $9,692.50. Loans against the first year cash values were made in the amount of $3,585.71 leaving a balance due of $6,106.79. A partial payment of $3,000 was made on March 20, 1956, leaving a balance of $3,106.79.

"This life insurance on Ernest Amante was purchased to protect the investors in the Boulder Club, a gambling casino located at 118 Fremont Street, Las Vegas, Nevada. Mr. Amante sought financial backing from me and my associates, and we felt that since Mr. Amante, who had over

lack of disclaimer thereof that constitute the basis of plaintiff's claim for an account stated.[5]

The trial court found, *inter alia*, "it is not true that on December 3, 1957, the deceased ARTHUR J. MENDENHALL was indebted to the plaintiff in the sum of $3,106.79 or any other sum or at all, and such allegation is not supported by the evidence. In connection therewith, the Court finds that the billing of December 3, 1957, was not an account stated based upon a prior indebtedness or agreement of the parties, but was a billing to the deceased ARTHUR J. MENDENHALL for a premium payment voluntarily made in advance by plaintiff, and such advancement was not made at the request of the said named deceased or under an agreement with the deceased to pay the same."

Plaintiff argues on appeal that the above finding is not supported by the evidence since "no evidence was offered by respondent." He further contends that since "the evidence of appellant both oral and documentary was uncontradicted, clear and not inherently improbable," "such evidence must be accepted by the court and the judgment [therefore] was contrary to the evidence."

In *T. V. Wire Products* v. *Osipow Electric Supply Co.*, 204 Cal.App.2d 522 [22 Cal.Rptr. 384], this court stated (pp. 525-526): "The general rule to be applied when reviewing the sufficiency of the evidence is set out in *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367 [210 P.2d 757]. The court stated (p. 370): '[W]here the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evi-

---

20 years experience in this type of venture was the key man, his life should be insured.

"The Boulder Club of Nevada failed in 1957 as the result of a disastrous fire in December 1956 and general business conditions which were poor throughout 1956 and 1957. Mr. John Curtis presented his statement for the balance of the premiums due but the Boulder Club was unable to make any payment. Since the closing of the Casino in 1957 there have been no funds available to pay this balance.

"Respectfully,
"Arthur J. Mendenhall, M.D.
for the Boulder Club,
Las Vegas, Nevada

"Mary Penfield
"Witness

[5] A creditor's claim was rejected by the administratrix.

dence or in the reasonable inferences that may be drawn therefrom.' (*Estate of Teel,* 25 Cal.2d 520, 526-527 [154 P.2d 384] ; *Estate of Bristol,* 23 Cal.2d 221, 223-224 [143 P.2d 689] ; *Standard Realty & Dev. Co.* v. *Ferrera,* 151 Cal.App.2d 514, 516 [311 P.2d 855] ; 3 Witkin, Calif. Proc. sec. 84, pp. 2245-2246.) 'The critical word in the definition is "substantial"; . . .' (*Estate of Teel, supra.*) ▮ In *Estate of Bristol, supra,* the court stated (pp. 223-224) : 'Appellate courts, therefore, if there be any reasonable doubt as to the sufficiency of the evidence to sustain a finding, should resolve that doubt in favor of the finding; and in searching the record and exploring the inferences which may arise from what is found there, to discover whether such doubt or conflict exists, the court should be realistic and practical.' "

While it is true that no witnesses were presented by the defendant, this is partially explained by the fact that Dr. Mendenhall (whose liability is sought to be established) was deceased at the time of the trial. Defendant, however, did cross-examine one of plaintiff's witnesses—his (plaintiff's) secretary, and defendant also introduced documentary evidence in the form of the two insurance policies. In *Isham* v. *Trimble,* 5 Cal.App.2d 648 [43 P.2d 581], the trial court pointed out (p. 651) : "At the trial no evidence whatever was presented by respondent and he was not called to the stand by appellants. But this did not require the trial court to accept appellant's theories; nor does it support their assertion that there was no conflict in the evidence. Substantial conflicts may, and often do, arise when all of the evidence is produced by one party and it is then the sole province of the jury to determine the questions in issue. [Citation.]"

▮▮ Although the court may not disregard uncontradicted, credible evidence, "[a]n appellate court cannot control a finding or conclusion denying credence, unless it appears that there are no matters or circumstances which at all impair the accuracy of the testimony, and a trial judge has an inherent right to disregard the testimony of any witness, or the effect of any prima facie showing based thereon, when he is satisfied that the witness is not telling the truth or his testimony is inherently improbable due to its inaccuracy, due to uncertainty, lapse of time, or *interest*[6] or bias of the witness. ▮ All of these things may be properly considered in deter-

---

. [6]All of the plaintiff's witnesses (plaintiff, his secretary, and his attorney) had an interest in the outcome of the instant case. (Footnote ours.)

mining the weight to be given the testimony of a witness *although there be no adverse testimony adduced.* The trial judge is the arbiter of the credibility of the witnesses. ▮▮ A witness may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his account of particular transactions or of his own conduct to discredit his whole story. . . . [Citations.] ▮▮ Where conflicting inferences may be drawn from testimony, this court is bound by the findings of the trial court as conclusively as in other cases of conflict. [Citation.]'' (Emphasis added.) (*La Jolla Casa deManana* v. *Hopkins*, 98 Cal.App.2d 339, 345-346 [219 P.2d 871].)

▮ It is a general rule that an account stated must be founded on previous transactions of a monetary character and where there is no underlying primary indebtedness, one is not created by the mere fact that an invoice is sent—even in the absence of a disclaimer. (*Stimson Mill Co.* v. *Hughes Mfg. Co.,* 8 Cal.App. 559 [97 P. 322].) ▮▮ The testimony of plaintiff's secretary that she had originally sent the invoice to Amante supports an inference that sending the invoice to decedent was a mere afterthought and that there was no personal obligation on the part of the decedent to pay the insurance premiums. The trial court could have reasonably concluded that, considering all evidence in the case, plaintiff failed to satisfy his burden of establishing the existence of an agreement, express or implied, by which decedent would assume personal liability. ▮▮ The testimony that the trust instrument was drafted by plaintiff's attorney and the testimony that the assignment of the insurance policy to the trustee was typed by plaintiff's secretary, when considered in the light of the terms of the trust which expressly provide that the decedent as trustee would not be personally liable, reasonably support an inference by the trial court that plaintiff was fully aware of all the facts herein and was willing to advance the premium on that basis. The above evidence also supports an inference that there was an implied agreement between plaintiff and the deceased to the effect that plaintiff would satisfy all claims out of the trust estate and would not, in any way, hold the decedent personally liable. This latter inference is further supported by: (1) the fact that the decedent's name nowhere appears on the face of the policies; (2) the testimony of plaintiff's secretary that the letter (set out in footnote 4, *supra*) was used with plaintiff's income tax returns claiming the amount due as a deduction; and (3) the

fact that the policies were never delivered to the decedent, the beneficiaries or the insured but remained in the possession of plaintiff.

Thus it cannot be said that there is not sufficient evidence to support the trial court's finding that plaintiff voluntarily advanced the insurance premiums and that such advance was made neither at the request of the deceased nor pursuant to an agreement with the deceased whereby the deceased would obligate himself to personally pay the same. " 'Unless it clearly appears that upon no hypothesis whatever is there substantial evidence to support a finding of the trier of fact, it cannot be set aside on appeal.' (*Murphy* v. *Ablow,* 123 Cal. App.2d 853, 858 [268 P.2d 80].)'' (*Estate of Reed,* 132 Cal. App.2d 732, 735 [282 P.2d 935].)

Judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.