[Civ. No. 19258.   First Dist., Div. One.   Apr. 10, 1961.]

ALLAN ZIMMERMAN, Appellant, v. BANK OF AMERICA
NATIONAL TRUST AND SAVINGS ASSOCIATION
(a National Banking Association), Respondent.

56

David B. Birenbaum and David M. Glickman for Appellant.

Samuel B. Stewart, Robert T. Shinkle, Theodore Sachsman, Charles E. Cooper and Thomas E. Montgomery for Respondent.

TOBRINER, J.— We face the question here whether a respondent, who allegedly maliciously induced the breach of appellant's oral contract, may successfully invoke the defense that the statute of frauds renders appellant's contract unenforceable and as a consequence relieves respondent of any liability. As we shall point out, we do not believe respondent may properly invoke such a defense.

Appellant's complaint alleges that he entered into one oral contract with the defendants Tony and Hazel Gaetani and another oral contract with defendants Israel and Tetiana Smiliansky (not involved as respondents in this appeal), "whereby said defendants agreed to employ . . . [appellant] as a real estate broker to obtain and procure a purchaser for said defendants' real property" for a commission based upon fixed percentages of the respective selling prices of the properties. On or about August 28, 1958, through appellant's efforts, the Gaetanis and Smilianskys agreed to exchange properties and to pay appellant a brokerage commission in the sum of $3,060.

According to the complaint, respondent, then, through its agents and employees acting within the scope of their employment, "stated to defendant Israel Smiliansky that there was a way to save money . . ., that the way in mind was to deprive . . . [appellant] . . . of his rightful and agreed upon commission"; that respondent's employee arranged a meeting between the defendants, who "were unacquainted with each other" prior to the meeting, and advised them to pay appellant only $1,000 rather than $3,060; that respondent "thereby knowingly, wilfully, intentionally, deliberately and maliciously induced defendants . . . to breach their contract with . . . [appellant]"; that defendants, "relying on and as a direct and proximate result of the above-mentioned inducements, did in fact breach their contract . . . thereby depriving . . . [appellant] of his rightful gain and profit. . . ." Appellant's complaint likewise set out causes of action against the Smilianskys and Gaetanis for conspiring with respondent to accomplish the foregoing objectives, but appellant did not join respondent as a defendant in those counts.

To the first count of this complaint, respondent demurred, alleging that the stated facts did not constitute a cause of action. The trial court sustained the demurrer without leave to amend. The court thereafter rendered judgment that appellant take nothing from respondent. Appellant has appealed from the judgment.

We must explore two conflicting doctrines and then determine which prevails here. One doctrine requires certain kinds of contracts to be in writing and finds expression in the statute of frauds. The other doctrine holds that a party who suffers the loss of an advantageous relationship or of a contract should recover his damages from a malicious interloper. Can one so damaged through the loss of an oral contract prevail despite noncompliance with the statute of frauds?

Since the instant agreement falls within the statute, it constitutes, without doubt, a voidable contract. Section 1624 of the Civil Code provides: "The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: . . . 5. An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission. . . ." The courts have held that the word "invalid" as used in the statute means voidable. (*Buckley* v. *Savage* (1960), 184 Cal.App.2d 18, 27-28 [7 Cal.Rptr. 328]; *Peyton* v. *Cly* (1960), 184 Cal.App.2d 193, 196 [7 Cal.Rptr. 504].) Once a defendant raises the defense of the statute against the contract, the broker cannot recover upon it. (*Lane* v. *Davis* (1959), 172 Cal.App.2d 302, 306 [342 P.2d 267]; *Augustine* v. *Trucco* (1954), 124 Cal.App.2d 229, 237-238 [268 P.2d 780]; *Colburn* v. *Sessin* (1949), 94 Cal.App.2d 4, 6 [209 P.2d 989].)

The tort of interference with an advantageous relationship, or with a contract, does not, however, disintegrate because it relates to a contract not written or an advantageous relation not articulated into a contract. The nature of the tort does not vary with the legal strength, or enforceability, of the relation disrupted. The actionable wrong lies in the inducement to break the contract or to sever the relationship, not in the kind of contract or relationship so disrupted, whether it is written or oral, enforceable or not enforceable.

The history of the tort discloses its essence. It contemplates, basically, a disruption of a relationship, not necessarily the breach of a contract. One of the roots of the

action reaches back to the penalty provided in the Ordinance of Labourers, (23 Edw. III (1349), st. 1) for receiving and retaining any laborer who had run away from his employer. Concomitant with the ordinance and the ensuing statute there developed a statutory action for enticing or harboring a servant of another, but such action did not depend upon a binding agreement for service between the master and the laborer. (Sayre, *Inducing Breach of Contract* (1923), 36 Harv. L. Rev., pp. 663, 666.) Without tracing the history of the doctrine, and omitting discussion of its flowering in *Lumley* v. *Gye* (1853), 2 El. & Bl. 216, 118 Eng. Rep. 749, we emphasize that the illegal interference went to a breach of the advantageous relationship; the presence of the contract was not conditional to the suit. We quote Prosser, Law of Torts: ''The subsequent development of the law has extended the principle to interference with advantageous economic relations even where they have not been cemented by contract; and the liability for inducing breach of contract now is regarded as merely one instance of protection against such unjustified interference.'' (2d ed. (1955), p. 725; footnotes omitted.)

If, then, the action did not originally require the relationship to be held together by the mortar of a contract at all, it surely does not currently demand the stronger mixture of an enforceable contract. Again we quote the learned Prosser: ''Accordingly, it usually is held that contracts which are voidable by reason of the statute of frauds, formal defects, lack of consideration, lack of mutuality, or even uncertainty of terms, still afford a basis for a tort action when the defendant interferes with their performance.'' (P. 726; footnotes omitted.)

It is, therefore, not surprising that many cases, embracing early as well as later pronouncements, hold that the action does not fail because the subject contract is not enforceable under the statute of frauds.

The first of these cases which we have discovered is *Rice* v. *Manley* (1876), 66 N. Y. 82 [23 Am.Rep. 30]. There plaintiffs ''made an agreement'' with a seller to purchase ''a large quantity of cheese,'' but the agreement was not in ''compliance with the statute of frauds so as to make the agreement binding upon either party. . . .'' (P. 83.) Defendant fraudulently induced the seller to ''deliver the cheese to him'' (p. 84) instead of to plaintiff. In holding plaintiff could recover

for the inducement of the breach of the contract in spite of its nonenforceability, the court compares the case to an analogous situation: "Suppose A made a parol contract with B for the purchase of land, and B is ready and willing to convey, but is prevented from so doing by the fraudulent representations of C as to A, by which B is deceived and induced to convey to C; in such case, although A could not have compelled B to give him the conveyance, it would be a reproach to the law to hold that C would not be liable to A for the damage caused by the fraud.'' (P. 85.)

In the succeeding years there have been a series of decisions reaching the same result. Thus in *Vaught* v. *Jonathan L. Pettyjohn & Co.* (1919), 104 Kan. 174 [178 P. 623], the court sustained an action by real estate brokers both to recover commissions upon an oral contract to exchange real property, as well as a demand by the brokers that defendants discharge a pretended mortgage which was urged in order to block the transaction. The court said: "A third party cannot make the statute of frauds available as an excuse for his wrongful conduct which interferes with and prevents the consummation of a transaction between other persons." (P. 624.) *Ringler* v. *Ruby* (1926), 117 Ore. 455 [244 P. 509], although reversed upon the ground that the evidence failed to show plaintiff suffered any damage, held that defendant could not, as a third party, raise the statute as a defense to plaintiff broker's suit for interference with his oral contract with the seller. Finally, in *Leibovitz* v. *Central Nat. Bank* (1944), 75 Ohio App. 25 [600 N.E.2d 727], the court rejected the same defense in an action for interference by defendant bank with plaintiff's attempt to sell her business.

The expression of contemporaneous cases is unequivocal. In *McCue* v. *Deppert* (1952), 21 N. J. Super. 591 [91 A.2d 503], the court said: "The circumstance that Kramer's agreement to pay a commission was oral and did not satisfy the statute of frauds does not remove the present action in tort against Deppert from the application of the above principles. The statute of frauds was enacted for the protection of the party sought to be charged. It is personal and not available to strangers to the agreement." (P. 505.) *Childress* v. *Abeles* (1954), 240 N. C. 667 [84 S.E.2d 176], holds: "The overwhelming weight of authority is that the defense of the Statute of Frauds is personal to the parties to the contract, and such a defense is not available to strangers to the agreement." (P. 184.)

While we have found no California case precisely on the point at issue, we believe the language of *Masoni* v. *Board of Trade of San Francisco* (1953), 119 Cal.App.2d 738 [260 P.2d 205], recognizes the general proposition that interference with prospective contractual relationships falls into the same category as interference with existing contractual relationships. Thus the court says: "Actionable interference of this kind [interference with contractual relations] is not limited to inducing breach of an existing contract or other wrongful conduct but comprises also unjustifiably inducing a third person not to enter into or continue a business relation with another." (P. 741.) We cannot conceive how the action for interference with an existing lawful contract, even though unenforceable, could occupy a status lower than that of interference with negotiations contemplating a contract. If interference with the negotiations constitutes the tort, interference with the contract in which the negotiations fructify must necessarily constitute the tort.

The cases of *Sweeley* v. *Gordon* (1941), 47 Cal.App.2d 385 [118 P.2d 16], and *Colburn* v. *Sessin, supra,* 94 Cal. App.2d 4, cited by respondent, may be distinguished from the factual situation which confronts us here. In both those cases, buyers of property, parties to the involved transactions, engaged in the alleged wrongful conduct. Thus, in *Colburn,* the court, in commenting upon *Sweeley,* said: "The court held (p. 387) that the seller had the legal right to stand upon the statute of frauds and the *purchaser* was not liable in damages to the plaintiff even if he did in fact induce the seller to assert nonliability by reason of the statute." (P. 7; emphasis added.) In *Sweeley,* upon the petition for rehearing, the court stated that the seller "had the legal right to stand upon the statute of frauds and Neubeiser [*the buyer*] did not become liable in damages to plaintiff if he did in fact induce Gordon [the seller] to stand upon his legal rights." (P. 387.) In the instant case the complaint, of course, alleges that the respondent bank, not a party to the transaction, attempted to induce the breach.

The status of the buyer in this context may differ from that of a third party. The situation in *Sweeley* illustrates the difference. There the purchase price of $68,500 for the property, in substance, included the broker's commission, and the seller by standing upon the statute of frauds and defeating the commission was enabled to reduce the price to $66,000. The court points out that the buyer "thereby profited to the

extent of $2500 by purchasing directly from the owner'' (p. 386) and the seller, by avoiding the commission, still was able ''to profit to the extent of $925 by selling directly'' to the buyer. (P. 386.) In substance, then, the buyer paid the great bulk of the commission and arguably could inform the seller that the broker could not enforce full payment because of the unenforceability of his contract.

It might be contended that in such a situation the umbrella of the statute could protect the buyer, who in reality stands in the same financial position as the seller. No such contention can be made as to the respondent bank, which was a stranger to the transaction. We are therefore not called upon to pass upon the issue whether the statute would or would not apply to a buyer in such circumstances as composed the cited cases in which the defendant was a party to the transaction. We hold that the third party respondent, at least, cannot lay hold of the statute in the instant case.

Nor does the cited case of *Augustine* v. *Trucco, supra,* 124 Cal.App.2d 229, establish respondent's contention. The court there did not hold that a third person could with impunity induce the breach of an oral real estate contract. The court instead found that the complaint had not alleged that the defendants (other real estate brokers) had ''intentionally or actively induced or persuaded the Truccos to breach any contract with plaintiff'' or ''that the Truccos would otherwise have performed any contract with plaintiff, or that it was breached or abandoned by any wrongful act of Allen or Dwyer [the other real estate brokers], or that any act of Allen or Dwyer was the moving cause of the Truccos' breaching the contract.'' (Pp. 246-247.) The court thus held that the complaint failed to state that the alleged wrongful conduct constituted the ''moving cause'' of the breach. (P. 247.) The court did not reach the exact issue as to whether the complaint, strengthened by the additional allegations, would have stated a cause of action; if they imply anything, the court's observations suggest the possibility of such a cause.

In summary we see no good reason why the protection against the dangers of oral agreements, which the statute affords to parties to a transaction, should inure to a stranger who seeks the destruction of the transaction and whose status fundamentally differs from that of the party whom the statute seeks to protect.

We reverse the judgment and instruct the trial court to permit respondent to answer appellant's complaint.

Bray, P. J., and Duniway, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 31, 1961.