30 Cal.Rptr. 39]
[Civ. No. 195.   Fifth Dist.   Apr. 10, 1963.]

H. E. ROGERS, Plaintiff and Respondent, v. OTTO T. GRUA et al., Defendants and Appellants.

Lerrigo, Thuesen & Thompson and Maurice E. Smith for Defendants and Appellants.

Nichols & Rogers and Harold E. Rogers, Jr., for Plaintiff and Respondent.

STONE, J.—This appeal is from a judgment in favor of plaintiff Rogers, a real estate broker, for a commission on the sale of real property, and against defendant Grua, who owned the property, and defendant Hilton, a real estate broker. The complaint alleged that defendants Grua and Hilton conspired to prevent plaintiff from collecting a commission he had earned by arranging a sale of the Grua ranch pursuant to a written authorization to sell.

The issues before this court arose out of the following sequence of events: Rogers wrote Grua requesting permission to sell the property, saying, in part: ''I would like to list your land and work on it for you.'' Grua replied by letter:

''In reply to your letter of the 29th, relative to my farm in Dairyland subdivision, It is listed for sale at $400.00 an acre.

''At the present time, the farm is leased and sharecropped on a one-fourth basis. The lease is so written, it can be terminated at any time by paying the tenant for the work he has performed for the current year.

''You have it's location, and you may have the listing with one or two other realtors. The reason for selling it is that it is too far away for me to supervise. The balance due on the ranch is $32,500.00 at 5 per cent interest.''

Rogers interested a Dr. Braun and a Mr. Welch in purchasing the property, after which he sought more detailed terms and conditions of the sale from Grua. Dr. Grua maintained his offices in Los Angeles and because he was busy, instructed Rogers to see defendant Hilton in Fresno. He stated that Hilton, a real estate broker, was an old friend and that he would advise Rogers as to the terms and conditions upon which he, Grua, would sell the property.

Pursuant to Grua's instructions, Rogers consulted Hilton and thereafter arranged a sale of the property to Mr. Welch upon terms agreeable to Hilton. Welch, Rogers and Hilton met at the office of a title company in Madera, escrow instructions were prepared, Welch paid a deposit on the purchase price, he and his wife signed the escrow instructions and other necessary documents, and a title company official agreed to forward the escrow documents to Grua for signature. During the escrow negotiations plaintiff Rogers and defendant Hilton agreed to share equally the $5,000 real estate commission provided by the escrow instructions.

Rogers advised Dr. Braun, his other prospective buyer, of the sale to Welch and of the escrow that had been opened at the local title company. Dr. Braun then consulted Hilton in Fresno and after some negotiating, made an offer to purchase the property. This offer differed in some details from the escrow terms entered into by Welch and his wife. It differed also in that Hilton was to receive the entire $5,000 commission.

Rogers testified that after Welch had executed the escrow papers he talked to Dr. Grua by telephone, that the doctor expressed satisfaction with the arrangement and said he would execute the papers which were being forwarded to him by the

escrow company. However, sometime thereafter he sold the property to Dr. Braun and Hilton was paid the entire $5,000 commission.

Plaintiff filed this action against Grua and Hilton to recover his real estate commission for arranging a sale to Welch. The first two causes of action are common counts, the third alleges a conspiracy between Hilton and Grua to deprive plaintiff of his commission for making the sale to Welch.

The trial court, sitting without a jury, found for the plaintiff on the third cause of action; findings were made which fully support the judgment. Defendants complain that no findings were made as to the first two causes of action predicated upon common count. The oversight is immaterial in view of the detailed findings made in support of the third cause of action. In *Bohn* v. *Watson*, 130 Cal.App.2d 24 [278 P. 2d 454], at page 41, it was said:

''It is elementary law that if a judgment is amply supported by findings which are sustained by sufficient evidence, questions relative to other findings become immaterial upon appeal and may be disregarded. [Citations.]'' (See also *Sand* v. *Concrete Service Co.*, 176 Cal.App.2d 169, 175 [1 Cal. Rptr. 257].)

Defendants' three principal arguments on appeal are: (1) A real estate broker's authorization to sell must be in writing, and the writing must contain the terms and conditions of sale; the letter from Grua to Rogers, *supra,* falls short of these requirements. (2) Hilton's authorization to act as agent for owner Grua in the sale of the property was not reduced to writing. (3) The third cause of action inadequately alleges a conspiracy, and the findings in support of this cause of action lack evidentiary support.

The letter before us designates the property to be sold, a selling price of $400 per acre, and it gives plaintiff the right to list the property. As defendants point out, the detailed terms and conditions of the sale are lacking and it is their contention that these details cannot be supplied orally. Defendants base their argument on the provisions of Civil Code section 1624, subdivision 5, and Code of Civil Procedure section 1973, subdivision 5, which require that an agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission must be in writing. The argument equates the requirements of a memorandum of employment of a real estate broker in an action to recover his fee, with the requirements of a writing that

will support an action for the specific performance of a contract. Insofar as the applicability of the statute of frauds is concerned, these two kinds of action are not apposite. Equity does require that all of the terms and conditions of an agreement for the sale of real estate be reduced to writing if it is sought to be specifically enforced. An action to recover a real estate commission, however, is an action at law for damages, not an equitable action to enforce a contract. The fact of employment as a broker must, of course, be evidenced by a writing as required by the code sections cited above, but the distinction lies in the nature of the memorandum required.

Unlike the contract for the sale of real property, the broker's authorization to sell need not contain all of the terms and conditions upon which the real property is to be sold. The details of the sale may be supplied orally pursuant to the broker's authorization, so long as the fact of employment is reduced to writing.

The question is not novel, and we find a clear exposition of the applicable law in *Lathrop* v. *Gauger*, 127 Cal.App.2d 754 [274 P.2d 730], at page 765:

"It is well settled that where the memorandum relating to the contract of employment of a real estate broker is sufficient to show his agency but does not set out all the other terms of the proposed transaction, oral evidence may be admitted to supply the omitted terms. [Citations.] It follows that since the statute of frauds governing this type of transaction does not require the terms of sale to be incorporated into the broker's contract of employment, it was unnecessary to show that Anderson was clothed with written authorization to transmit to plaintiff the terms upon which defendant desired to sell."

The letter addressed by owner Grua to plaintiff real estate broker specifically stated: "Relative to my farm in Dairyland subdivision, It is listed for sale at $400.00 an acre. . . . You have it's location, and you may have the listing with one or two other realtors."

This letter constitutes a sufficient memorandum of an authorization to sell since it clearly expresses the fact of employment within the rationale of *Lathrop, supra,* and cases cited therein.

Defendants lean heavily upon the case of *Pacific etc. Dev. Corp.* v. *Western Pacific R.R. Co.,* 47 Cal.2d 62 [301 P.2d 825], in which the Supreme Court held that the letter there involved did not constitute a sufficient memorandum of a con-

tract employing the broker to sell real estate. The language of the letter in the *Pacific* case differs markedly from the language used in the letter before us. As the Supreme Court remarked at page 69 of *Pacific*, the letter "made no reference to the fact of employment by defendant of plaintiff or to any compensation."

█ Defendants next point out that the detailed terms of sale omitted from the letter upon which plaintiff relies, were supplied not by Grua, the owner, but by Hilton, his agent. The statute of frauds, they assert, requires Hilton's authority to act for Grua to be evidenced by a note or memorandum thereof in writing. As heretofore noted, the details of a listing to sell real property may be supplied orally by the owner of the property if the real estate broker's authorization to sell is in writing. Therefore it should follow that an agent of the owner, in this case Hilton, could likewise orally supply the details of the terms and conditions of a sale. Certainly the authorization for the agent to act should require no greater formality than is required to legalize the act of the principal. Our position finds support in *Lathrop* v. *Gauger, supra,* wherein the detailed terms of a sale of real estate were furnished orally to a broker by the owner's attorney.

█ Furthermore, after Welch went into escrow with the approval of Hilton, Grua told plaintiff by telephone that he liked the Welch "deal" and that he would sign the Welch escrow papers. Since Grua as owner could have supplied the details orally, certainly he could orally ratify details supplied by his agent.

█ Defendants object to the sufficiency of the allegation of conspiracy in plaintiff's complaint, and additionally assert that the findings fail to reflect the elements necessary to constitute a conspiracy. The gist of defendants' contention is that no specific wrongful or illegal act is alleged in the complaint or is reflected by the findings. Defendants' discussion of just what must be alleged and proved in a civil conspiracy action is vague and indecisive. █ The thrust of their argument is that the act must be wrongful in the sense that it is illegal. Defendants, it appears, are confusing the elements of civil conspiracy with those of criminal conspiracy. Although the act that causes plaintiff damage must be wrongful in civil conspiracy, it need not be a criminal act nor need it constitute a statutory violation. █ The essence of civil conspiracy is stated in the case of *California Auto Court Assn.* v. *Cohn,* 98 Cal.App.2d 145 [219 P.2d 511]. This case

was decided on facts which presented a question similar to the one before us, and the court said, at page 149: "The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design. The cause of action is the damage suffered."

In the instant case plaintiff alleged that defendants *agreed* between them that defendant Grua as owner would refuse to consummate the sale to Welch and thus deprive plaintiff of his commission for making the sale to Welch; and that *pursuant to the agreement* defendant Grua, at the request and insistence of defendant Hilton, consummated a sale of said property to Dr. Braun, depriving plaintiff of his commission for making the sale to Welch. The allegations are sufficient to state a cause of action, and the findings fully support the allegations of the complaint.

The allegations of the complaint and the findings pursuant thereto are sufficient also to support a judgment against each defendant as a coconspirator. In *California Auto Court Assn.* v. *Cohn, supra,* the court said, at page 149: "Each participant in the wrongful act is responsible as a joint tort feasor for all damages ensuing from the wrong, regardless of whether or not he was a direct actor and of the degree of his activity."

There is evidence from which the court could infer that Dr. Grua sold the property to Dr. Braun at Hilton's urging so that Hilton would receive the entire commission. This occurred after Grua's oral approval of the Welch sale. Since the inference is not unreasonable, defendants are bound by it. (*Butler* v. *Nepple,* 54 Cal.2d 589, 597 [6 Cal. Rptr. 767, 354 P.2d 239] ; *T. V. Wire Products* v. *Osipow Electric Supply Co.,* 204 Cal.App.2d 522, 528 [22 Cal.Rptr. 384] ; *Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557].)

Plaintiff was deprived of his commission by defendants' acts, which thus constituted an intentional interference with a contractual relationship. It is settled that interference with a contractual relationship, either by unlawful means or by lawful means which are unjustifiable, is actionable, and that it may be the basis for the recovery of civil damages. (*California Auto Court Assn.* v. *Cohn, supra; Herron* v. *State Farm Mutual Ins. Co.,* 56 Cal.2d 202, 205 [14 Cal.Rptr. 294, 363 P.2d 310] ; *Lipman* v. *Brisbane Elementary Sch. Dist.* 55 Cal.2d 224, 232 [11 Cal.Rptr. 97, 359 P.2d 465].)

■ In this connection, defendants argue that there is no direct evidence of a wrongful act committed by either defendant. It is true that the finding that Hilton induced Grua not to complete the sale to Welch depends to a large degree on circumstantial evidence. But the trial court may rely on circumstantial evidence if it finds it credible and finds that the inferences to be drawn therefrom are reasonable. As was said in *California Auto Court Assn.* v. *Cohn, supra,* page 149:

". . . because of the inherent difficulty in proving a conspiracy, it has been held that a conspiracy may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances." (See also *Bohn* v. *Watson, supra,* 130 Cal.App. 2d 24, 34, and cases cited therein.)

■ Finally, defendant Hilton asserts that he did nothing wrong in arranging the sale to Dr. Braun because it was his duty as a real estate broker to make the best possible "deal" for his client. He argues that he simply found a more favorable sale for Dr. Grua. Plaintiff argues, plausibly, that the terms of the Welch sale were the more satisfactory, but the entire argument is immaterial to the issues before us. Hilton was present with plaintiff and Welch at the title company office, representing Dr. Grua, at the time Welch went into escrow. Hilton not only approved the Welch sale but he also required that one-half of the $5,000 commission be paid to him as a condition of the escrow. Therefore, conceding that Hilton thereafter obtained a better "deal" for his friend, Dr. Grua, it in no way nullifies the fact that plaintiff had earned his fee by securing a buyer, nor does it justify Hilton's claim to the entire commission rather than the one-half he agreed to take at the time he approved the Welch sale. If the sale to Dr. Braun was a better "deal" then Dr. Grua has received the benefit of the better deal, and the only question here is whether Rogers, pursuant to his listing as a real estate broker, secured a buyer who was ready, able and willing to purchase the property.

The evidence which the trial court elected to believe amply supports the finding that Rogers earned his commission.

The judgment is affirmed.

Conley, P. J., and Brown (R.M.), J., concurred.