[Civ. No. 23157.   First Dist., Div. Two.   Feb. 14, 1967.]

CHARLES HOWARD ALLEN et al., Plaintiffs and Appellants, v. ROBERT D. POWELL et al., Defendants and Respondents.

Riede & Elliott and Ronald D. Schenck for Plaintiffs and Appellants.

Thiel, Sassone, Howard, Wallace & Bolton, Freitas, Allen, McCarthy & Bettini and Edgar B. Washburn for Defendants and Respondents.

AGEE, J. — Plaintiffs operate a duly licensed real estate brokerage firm. On July 17, 1961 those defendants who are hereafter referred to as the original owners listed their parcel of commercial real property located in Larkspur with plaintiffs. Under the listing agreement plaintiffs were to receive the standard real estate commission for services rendered in the leasing of said property.

On November 6, 1961 plaintiffs negotiated a 25-year lease of a 4.5-acre portion of said property to defendant Lee Bros., Inc., and thereby became entitled to receive a commission of $60,000 from the original owners, who acknowledged such debt in writing on December 15, 1961.

Nothing was ever paid on the commission, and plaintiffs filed this action on November 19, 1962, not only against the original owners but also against Lee Bros.

The general demurrer of Lee Bros. to the first amended complaint was sustained without leave to amend. Judgment was thereupon entered in its favor and plaintiffs have appealed therefrom.

The case proceeded to trial against the original owners on the first cause of action alleged in the first amended complaint and resulted in a judgment of $60,000 in favor of plaintiffs. No appeal has been taken from this portion of the judgment.

### FIRST COUNT

The first cause of action is based on the contract and does not attempt to state a cause of action against Lee Bros. However, we summarize its allegations because they are incorporated by reference in the remaining four causes.

The first cause of action alleges the execution of the listing agreement by the original owners, the procuring of the Lee Bros. lease by plaintiffs, the acknowledgment by the original owners of the commission due, and the nonpayment of such commission.

### SECOND COUNT

The second cause of action alleges a tortious conspiracy between Lee Bros. and the original owners to interfere with and frustrate plaintiffs' contractual right to collect the commission provided for in the listing agreement.

The following allegations are added to those of the first cause of action referred to above: that Lee Bros. knew at the

time of the execution of the lease that the funds for the payment of plaintiffs' commission were to come from the monthly rental payments provided for in the lease; that the amount of such commission was a part of the total cost of the lease to the lessee, Lee Bros.; that the lease required the original owners to construct certain buildings and other improvements on the leased land and to complete the same on or before October 1, 1962; that no such construction was ever commenced by the original owners; that after said lease was executed the original owners represented to plaintiffs that they were in financial difficulties and might not be able to meet their commitments under the lease.

With this background, the conspiracy is alleged as follows: that Lee Bros. and the original owners ''collusively and without plaintiffs' knowledge and with a joint intent to deprive, and for the purpose of depriving, plaintiffs of the commission which plaintiffs had earned, entered into a written contract of sale in which defendant Lee Bros. agreed to purchase the land involved in the lease from defendants Original Owners, and in which defendants Original Owners agreed to sell the said land to defendant Lee Bros.''; that the sale was completed on September 6, 1962, for $363,000, which amount was in full payment for the land with no improvements thereon; that Lee Bros. then knew the financial condition of the original owners; that the sale was made in a form which called for payments by Lee Bros. to creditors of the original owners *other* than plaintiffs, thereby leaving plaintiffs with a claim for their commission against insolvent debtors.

The motive of Lee Bros. in entering into the conspiracy is alleged to be that it thereby acquired the land and the use thereof for an amount which did not include plaintiffs' commission as a part of the cost of such acquisition.

Plaintiffs allege that the damages suffered as the result of the conspiracy is the amount of their commission, $60,000, no part of which has been paid.

Preliminarily, this count arguably might state either of two causes of action: interference with contract on the part of Lee Bros. or conspiracy to interfere with the contract on the part of Lee Bros. and the original owners.

*Interference with contract.* The elements which must be pleaded for this cause of action are specified in *Freed* v. *Manchester Service, Inc.* (1958) 165 Cal.App.2d 186, 189 [331 P.2d 689]: ''Specifically, plaintiff must allege the existence of a valid contract [citations]; that the defendant had

knowledge of the existence of the contract and intended to induce a breach thereof [citations] ; that the contract was in fact breached resulting in injury to plaintiff [citations] ; and the breach and resulting injury must have been proximately caused by defendant's unjustified or wrongful conduct. [Citations.]''

The acts which induce the breach need not be unlawful. It is sufficient if they are lawful, but without justification. Such '' [j]ustification is an affirmative defense and may not be considered as supporting the trial court's action in sustaining a demurrer unless it appears on the face of the complaint. [Citations.]'' (*Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202, 207 [14 Cal.Rptr. 294, 363 P.2d 310] ; see *Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33, 39 [112 P.2d 631] ; *Roberts* v. *Wachter* (1951) 104 Cal.App.2d 281, 290 [231 P.2d 540].)

It was sufficient in *Remillard-Dandini Co.* v. *Dandini* (1941) 46 Cal.App.2d 678, 679 [116 P.2d 641], that the plaintiff there alleged that the defendant went to certain of the plaintiff's creditors to induce them to cease dealing with the plaintiff, as a result of which the plaintiff was unable to procure necessary materials.

Plaintiffs have sufficiently pleaded a cause of action for interference with contract within the rules set forth in these cases. Their position is closely akin to that of a real estate broker who has a listing contract for the sale of property, but who, after he performs by securing a suitable buyer, discovers that the prospective purchaser and the owner consummate the sale in such a way that they intentionally breach the agent's commission contract. In such a case, the agent may recover from the purchaser. (See *Zimmerman* v. *Bank of America* (1961) 191 Cal.App.2d 55 [12 Cal.Rptr. 319] ; *California Auto Court Assn.* v. *Cohn* (1950) 98 Cal.App.2d 145 [219 P.2d 511] ; cf. also *Freed* v. *Manchester Service, Inc., supra.*)

Of course, plaintiffs must prove that Lee Bros. actively induced the original owners to breach their contract with plaintiffs. (*Imperial Ice Co.* v. *Rossier, supra,* 18 Cal.2d, at 39.) If it developed in the proof that Lee Bros. merely paid the price requested by the original owners and that the breach of the commission contract resulted from the unilateral acts of the original owners, then Lee Bros. would not be liable for interference.

Lee Bros. argues that plaintiffs had no contractual relationship because they had no right in the lease. Plaintiffs have not

claimed any property right in the lease. Rather, they have alleged that the original owners were obligated by a listing contract to pay a $60,000 commission and that Lee Bros. wrongfully interfered with that contract. (See *Zimmerman* v. *Bank of America, supra,* and *California Auto Court Assn.* v. *Cohn, supra,* in which real estate brokers have been protected without any necessity of alleging an interest in the subject property.)

Lee Bros. contends that no acts of interference are alleged because it had an absolute right to rescind the lease and substitute in its place a contract of sale, to neglect to provide for the commission due to appellants, and to pay the purchase price to creditors of the original owners other than plaintiffs.

This overlooks the allegation that "defendant Lee Bros. obtained the land and/or the use thereof, for an amount which did not include plaintiffs' commission as a part of the cost of the lease contract; . . ." When coupled with the allegation that all defendants joined together with an intent to deprive plaintiffs of their commission, it is reasonable to conclude, if plaintiffs can prove their allegations, that Lee Bros. actively induced the breach in order to secure the property for a lower price. This sufficiently alleges acts amounting to an interference with contract.

Lee Bros. contends also that plaintiffs have failed to allege a causal connection between the acts of interference and the breach. The first amended complaint alleges that "as a result of said tortious interference by defendant Lee Bros., plaintiffs have been damaged in the amount of [$60,000] . . ." Reading the complaint as a whole, it is clear that the damage suffered is the breach of contract.

Lee Bros. relies on a statement in *Hill* v. *Progress Co.* (1947) 79 Cal.App.2d 771, 780 [180 P.2d 956], that plaintiffs "must establish, by the evidence, that the contract which otherwise would have been performed, was breached and abandoned by reason of their wrongful act and that such act was the moving cause thereof." This is the requirement of proximate causation, and the court therein reversed because the evidence was insufficient to support a finding of such.

In *Augustine* v. *Trucco* (1954) 124 Cal.App.2d 229, 246 [268 P.2d 780], an appeal from a judgment after a general demurrer was sustained without leave to amend, the court almost transformed the statement in the *Hill* case into a specific, required allegation. "A plaintiff, seeking to hold one liable for unjustifiably inducing another to break a contract, must

allege that *the contract would otherwise have been performed,* and that it was breached and abandoned by reason of the defendant's wrongful act and that such act was the moving cause thereof. Unless the act complained of was the proximate cause of the injury, there is no liability." (Italics supplied.)

Lee Bros. seems to seize upon the words emphasized above. In the instant case, plaintiffs nowhere allege that the contract would otherwise have been performed except for the acts of Lee Bros. However, plaintiffs have sufficiently alleged that the breach was proximately caused by these acts. (*Freed* v. *Manchester Service, Inc., supra,* 165 Cal.App.2d at 189, fn.2.)

The problem seems to be one of semantics. If the acts are the proximate cause of the breach, then it follows that the contract would otherwise have been performed. If the breach would occur in any event, then the acts cannot be the proximate cause. Thus, no matter how it is phrased, for the purposes of pleading, it is sufficient if the plaintiff alleges, in substance, proximate causation.

■ *Conspiracy to interfere with contract.* "The gist of an action charging civil conspiracy is not the conspiracy but the damages suffered. [Citations.] It is the long established rule that a conspiracy, in and of itself, however atrocious, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage. [Citations.] . . . The advantage to the pleader in charging a conspiracy is to implicate all participating in the common design and thus fasten liability on him who agreed to the plan to commit the wrong as well as on him who actually carried it out. [Citations.] ■ The conspiracy 'may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances.' [Citations.]

■ "To state a cause of action for conspiracy, the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts. [Citations.]" (*Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 64-65 [35 Cal.Rptr. 652].)

■ In the instant case, having determined above that the wrongful acts (namely, interference with contract) and the damage to the appellants (breach of contract) have been properly alleged as to the cause of action for interference with contract, it is only necessary now to determine if "the

formation and operation of the conspiracy" was sufficiently alleged.

Plaintiffs alleged the formation in general terms, "collusively and without plaintiffs' knowledge and with a joint intent to deprive, and for the purpose of depriving, plaintiffs of the commission which plaintiffs had earned. . . ." Such general allegations of agreement have been held sufficient. (*Farr* v. *Bramblett* (1955) 132 Cal.App.2d 36, 47 [281 P.2d 372].)

Moreover, since the gravamen of the action is the unlawful act or civil wrong done pursuant to the agreement, the conspiracy averment has been held *unnecessary,* providing the acts are otherwise sufficiently alleged. (*Hege* v. *Worthington, Park & Worthington* (1962) 209 Cal.App.2d 670, 678 [26 Cal.Rptr. 132].)

We hold that the second count states a cause of action against defendant Lee Bros. and is good as against a general demurrer.

### THIRD COUNT

This count seeks recovery for Lee Bros.' unjust enrichment because of the acts alleged in count two. "That as a result of defendant Lee Bros.' said tortious, wrongful and collusive action, defendant Lee Bros. has been unjustly enriched at the expense of and to the detriment of plaintiffs in the sum of [$60,000] . . . in that defendant Lee Bros., by its said collusive action procured said land at a sum which was less than the fair market value thereof by the amount of plaintiffs' $60,000.00 commission; . . ."

Plaintiffs argue that this count is good as a cause of action in quasi contract, based upon section 2224 of the Civil Code which provides: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

This is the statutory basis for imposing a constructive trust. The remedy is equitable in nature, and the plaintiff's remedy at law must be inadequate. (*Smith* v. *Bliss* (1941) 44 Cal. App.2d 171, 177 [112 P.2d 30]; see *Monarco* v. *Lo Greco* (1950) 35 Cal.2d 621 [220 P.2d 737], although section 2224 is not cited.)

In the instant case, plaintiffs have not alleged such an inadequacy of the remedy at law. Since the action is basically

510

one for money damages, and an action for tort has been well pleaded in the second count, it would appear that no such allegation can be made.

This count is likewise insufficient to state a common count, whereby the plaintiffs waive the tort (here interference with contract) and sue in assumpsit. (2 Witkin, Cal. Procedure (1954) Pleading § 265, pp. 1241-1242.)

The essential allegations of a common count "are (1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment." (2 Witkin, Cal. Procedure (1954) Pleading § 266, p. 1242.) In the instant case, there is no allegation of nonpayment, although such is obvious from the contents of other counts. This could be cured, at any rate, by amendment.

However, the fatal defect is the lack of an allegation of consideration furnished. In fact, such an allegation is impossible. The "consideration" is a fiction when the tort is *waived*, for there is no intent to give anything as an agreed exchange. But, in order to employ the fiction, there must be something moving to the defendant, to support the implied promise to pay therefor. In the instant case, there is nothing so moving in order for plaintiffs to waive the tort. No more so, that is, than there would be with an assault and battery or negligence case. Plaintiffs must simply rely on the tort, which has been sufficiently alleged in the second count.

The three cases cited by plaintiffs on this point all involve something moving from the plaintiff to the defendant. (*Ward* v. *Taggart* (1959) 51 Cal.2d 736 [336 P.2d 534], money; *Frank* v. *Tavares* (1956) 142 Cal.App.2d 683 [298 P.2d 887], real property; *Major-Blakeney Corp.* v. *Jenkins* (1953) 121 Cal.App.2d 325 [263 P.2d 655], money.)

We hold that the general demurrer to the third count was properly sustained.

FOURTH COUNT

This count alleges a conspiracy to defraud, in that the "defendants represented to plaintiffs that the lease would be consummated and that, therefore, said lease was a saleable asset;" however, the defendants "had no intention during this period of ever consummating said lease agreement but made these representations for the sole purpose of misleading plaintiffs," and they "intentionally concealed the truth as to their intentions with respect to the lease and as to the sale of the property."

Noticeably lacking is any allegation that plaintiffs relied on the alleged misrepresentations to their damage. (2 Witkin, Cal. Procedure (1954) Pleading §§ 362, 363, pp. 1341-1344.) They argue that such ''is implicit from the fact that plaintiffs made efforts to find a purchaser for the land, subject to the lease, and from the fact that appellants actually brought in three valid offers for the purchase of the land subject to the lease.'' Even if such is ''implicit'' in the first amended complaint, this is not the damage of which plaintiffs complain. Rather, in this count, they are concerned with the loss of their $60,000 commission due under the listing contract.

*The contract had been executed and fully performed on appellants' side, with nothing remaining but the payment of money.* Thus, it is impossible that any misrepresentations subsequently made could cause a reliance resulting in the damage that did occur, namely, the breach of contract.

We hold that the general demurrer to the fourth count was properly sustained.

### FIFTH COUNT

This count is a common count for services rendered. By incorporating certain paragraphs from previous counts, plaintiffs here allege that around July 1961, they contacted Lee Bros. to determine if it was interested in sites for expansion in Marin County. Lee Bros. answered affirmatively and requested plaintiffs to inform it of any such information they might gain.

Thereafter, plaintiffs brought together Lee Bros. and the original owners pursuant to the listing contract.

The original owners requested plaintiffs to seek a purchaser who would take the property subject to the lease. Plaintiffs thereafter did produce several offers from prospective purchasers. However, the original owners executed a contract of sale with Lee Bros. on September 6, 1962.

Plaintiffs allege ''that the entering into of said lease and the later contract of sale was all a part of one continuing transaction, of which plaintiffs had been the procuring cause and through both of which forms defendant Lee Bros. obtained the beneficial use of said land for their merchandising operation and remaining defendants received money for their prior rights.''

Based upon this alleged continuity, plaintiffs claim that defendants are ''indebted to the plaintiffs in the sum of $60,000.00 on account of plaintiffs' services as brokers, rendered at the request of defendants, the purchase and sale of

said property.''[1] They allege the amount has not been paid.

With the foregoing allegations, plaintiffs have pleaded a good common count: they have alleged the indebtedness ($60,000), the consideration (services rendered), and nonpayment. (See 2 Witkin, Cal. Procedure (1954) Pleading § 266, p. 1242; § 272, p. 1247.)

The fatal defect, however, is that a real estate broker's commission contract must be in writing to be enforceable. (Civ. Code, § 1624, *Beazell* v. *Schrader* (1963) 59 Cal.2d 577, 582 [30 Cal.Rptr. 534, 381 P.2d 390]; *Ira Garson Realty Co.* v. *Brown* (1960) 180 Cal.App.2d 615 [4 Cal.Rptr. 734].) Appellants have failed to allege any facts which would estop Lee Bros. from pleading the statute of frauds. (*Pacific Southwest etc. Corp.* v. *Western Pac. R.R. Co.* (1956) 47 Cal.2d 62 [301 P.2d 825]; *King* v. *Tilden Park Estates* (1958) 156 Cal.App.2d 824, 830 [320 P.2d 109].)

We hold that the demurrer to the fifth count was properly sustained.

The judgment is reversed to the extent it is based on the order sustaining Lee Bros.' general demurrer to the second count, but otherwise affirmed. The cause is remanded to the trial court with directions to overrule said demurrer to the second count and to grant Lee Bros. a reasonable time to answer, if so advised. Each party is to bear its own respective costs on appeal.

Shoemaker, P. J., and Taylor, J., concurred.

---

[1]The puzzling wording of this allegation appears to be the result of the pleader's inartful hand. It is clear that appellants are attempting to recover the reasonable value of their services as brokers in the *sale* of the property rather than merely the lease.