[Civ. No. 30483. Second Dist., Div. Four. Dec. 6, 1967.]

HUGH GOLDEN, Plaintiff and Appellant, v. LEO E. ANDERSON et al., Defendants and Respondents.

Stephan B. Robinson, Jr., for Plaintiff and Appellant.

Meserve, Mumper & Hughes, Downey A. Grosenbaugh and Dennett F. Kouri for Defendants and Respondents.

JEFFERSON, J.—Plaintiff, a real estate broker, filed an amended complaint against the Forest Lawn Company (a California corporation), against three connected corporations and against nine individual defendants, who were officers, employees or agents of the corporate defendants, for damages for

alleged intentional interference with a brokerage agreement existing between plaintiff and the sellers of certain real property (referred to as defendants Bayly), and for declaratory relief from all defendants.

The nine individual defendants, of the thirteen defendants Forest Lawn, filed a motion for summary judgment. The court below granted the motion and plaintiff appeals.

In its memorandum of decision, the court set out the following grounds for its ruling:

(1) Six of the nine defendants (Anderson, Braunschweiger, Eaton, Eilers, McLaughlin and Talbott), could not be held liable to plaintiff for interference with any business relationship between plaintiff and defendants Bayly, because no evidence was presented that they had any knowledge such relationship existed. (2) As to the three remaining defendants (Blalock, Morrison and Llewellyn), even though there was evidence that they were aware of the business relationship and evidence from which an intention to interfere with that relationship could be inferred, because they were shown to have acted at all times solely within the course and scope of their employment with the corporate defendants, they could not be held individually liable.

The notice of motion for summary judgment recites that it is based on "the papers, documents, declarations and records on file" in the action. The individual defendants each filed a declaration in support of the motion. A declaration in opposition was filed by plaintiff's counsel. The latter was based on plaintiff's discovery then on file. That discovery—which includes the depositions of the parties, answers to interrogatories and requests for admissions—was before the trial court. All this evidence must be considered here in determining the propriety of the court's ruling on the motion for summary judgment. (*Lynch* v. *Spilman,* 67 Cal.2d 251, 259 [62 Cal. Rptr. 12, 431 P.2d 636].)

The following is a statement of the evidence and the inferences most favorable to the plaintiff.

Early in 1956 defendant Harold Bayly authorized plaintiff to attempt to find a purchaser for the Bayly Ranch. Plaintiff was informed that since many other brokers were also working to find a buyer, defendants Bayly would not give any broker a written listing; the broker who produced the buyer would be paid the commission. Among other prospective purchasers, plaintiff solicited and showed the ranch to the defendant Forest Lawn Company. Plaintiff had repeated con-

versations concerning the ranch with its officers, and furnished them with maps and other information. Plaintiff initially discussed the possibility of the Forest Lawn Company purchasng the ranch with defendant Blalock, its executive vice-president. Blalock introduced plaintiff to defendants Morrison and Llewellyn, officers of one of the defendant corporations connected with the Forest Lawn Company. From 1956 to 1960 plaintiff continued his contact with the Forest Lawn Company concerning the possible purchase. Defendants Blalock, Morrison and Llewellyn all knew that plaintiff was a real estate broker and that he was attempting to interest the Forest Lawn Company in buying the ranch. Plaintiff informed Harold Bayly about his contacts with Forest Lawn.

In June 1958 two representatives of Forest Lawn (not parties to this action), met and discussed with Harold Bayly the possible purchase of the ranch by Forest Lawn. Plaintiff's name was mentioned at this meeting. After the meeting the management of Forest Lawn decided to attempt to negotiate the purchase of the ranch through agents who would not disclose that Forest Lawn was the prospective buyer. Pursuant to this decision, in the latter part of 1959 and through February 1960, defendant Braunscheweiger, an officer of the defendant corporations, and defendant Eilers, an attorney employed by them, attempted unsuccessfully to buy the ranch for Forest Lawn. During the negotiations Braunschweiger told Harold Bayly he represented a group of Eastern financial men; that he would negotiate the sale price on the basis that he would get no compensation from the sellers and that no broker's commission would be payable.

During the period these negotiations were taking place, in his continuing attempts to interest Forest Lawn in the Bayly Ranch, plaintiff again met with defendant Blalock. The latter asked plaintiff if he had a written listing on the ranch. Defendant replied that the agreement was oral but that he felt he could trust Harold Bayly. Plaintiff told Bayly about his conversation with Blalock and Bayly reaffirmed that plaintiff would be paid his commission if Forest Lawn purchased the ranch.

At a meeting in January 1960 Braunschweiger and Bayly agreed to a price of $1,500,000 for the ranch. Defendant Eilers appeared with Braunschweiger at the meeting and was introduced to Bayly as an agent for an undisclosed principal who would make the purchase. Eilers indicated to Bayly that

Bayly should assume liability for any broker's commission to be paid. Bayly rejected this demand and in turn demanded identification of the principal buyer. Eilers refused. At this point the negotiations broke off.

In March 1960 negotiations were begun which culminated in the sale of the property in May 1960. Defendant Talbot, a real estate salesman working for Forest Lawn, approached Bayly and told him he represented a Boston investment trust which was interested in purchasing the property. He told Bayly he would negotiate the selling price on the basis that no broker's commission would be payable by the sellers. A price of $1,650,000 was subsequently agreed upon, but Bayly demanded that Talbott produce his principal. On May 13, 1960, a meeting was called to draw up the escrow instructions. Defendant McLaughlin, an attorney representing Forest Lawn, appeared with Talbott. He was introduced to Bayly by Talbott. Bayly was told that defendant Anderson, also an attorney, was the principal buyer of the property. According to Bayly, McLaughlin represented himself as being Anderson. From May 16 to November 1960, Anderson was the owner of record of the property. In November he conveyed it to Forest Lawn. When Bayly discovered this fact he notified plaintiff, who demanded his commission.

The basic underlying theory of plaintiff's action, is that the various defendants Forest Lawn, in furtherance of a conspiracy between them, interfered with the brokerage relationship plaintiff had with the sellers of the Bayly Ranch; that they did so unjustifiably and through fraudulent representations and concealment. In a nutshell, plaintiff alleges that defendants Forest Lawn ''did him out of his commission'' by purchasing the property through an undisclosed principal, thereby concealing the fact that there was a broker involved, namely plaintiff, who had rendered services pursuant to an agreement with the seller in interesting them in buying the ranch.

''It is settled that interference with a contractual relationship, either by unlawful means or by lawful means which are unjustifiable, is actionable, and that it may be the basis for the recovery of civil damages. [Citations.]'' (*Rogers* v. *Grua*, 215 Cal.App.2d, 1, 8 [30 Cal.Rptr. 39].) In *Rogers* the plaintiff was a real estate broker seeking to recover a commission. It was alleged that the property owner and another broker agreed among themselves to deprive him of his commission by refusing to consummate a sale to a purchaser

secured by him, and that, pursuant to this agreement, the property was sold to another purchaser. A judgment for the plaintiff was affirmed on appeal, the court finding that the evidence established a cause of action based on a civil conspiracy; that the acts of defendants constituted an intentional interference with a contractual relationship.

Preliminarily, it is to be observed that although the brokerage agreement relied upon by plaintiff was oral, and thus subject to the defense of the statute of frauds (Civ. Code, § 1624) which could be asserted by the seller of the property to defeat any action by plaintiff on the contract, defendants, being strangers to such contract, may not interpose that defense in this action which is founded in tort. (*Zimmerman* v. *Bank of America*, 191 Cal.App.2d 55 [12 Cal. Rptr. 319].) "[C]ontracts which are voidable by reason of the statute of frauds, formal defects, lack of consideration, lack of mutuality, or even uncertainty of terms, still afford a basis for a tort action when the defendant interferes with their performance." (*Prosser, Torts* (2d ed. 1955) § 106, p. 726.) The rationale for the rule is succinctly stated in *Harris* v. *Perl* (1963) 41 N.J. 455 [197 A.2d 359, 363], in the following language: "[O]ne who unjustifiably interferes with the contract of another is guilty of a wrong. And since men usually honor their promises no matter what flaws a lawyer can find, the offender should not be heard to say the contract he meddled with could not have been enforced."

A summary judgment is proper only if the evidence before the court presents no triable issue. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.*, 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Martin* v. *General Finance Co.*, 239 Cal.App. 2d 438, 445-446 [48 Cal.Rptr 773].)

In regard to defendants Blalock, Llewellyn and Morrison, the evidence indicates that each was aware of plaintiff's brokerage relationship with the seller of the property throughout all the negotiations leading up to the purchase of the property for Forest Lawn. Clearly, an issue of fact was raised as to whether their acts were in furtherance of a conspiracy to deny plaintiff his commission. The trial court, however, did not reach this point.

The court found that, since the evidence showed these three defendants were acting in their representative capacities as managing agents of the defendant corporations, they were immune from liability. The court erred in so concluding. Plaintiff's action is for an intentional tort. All persons who

are shown to have participated are liable for the full amount of the damages suffered. (*Joanaco Projects, Inc.* v. *Nixon & Tierney Constr. Co.*, 248 Cal.App.2d 821, 832-833 [57 Cal. Rptr. 48].) "When conspiring corporate officials act tortiously and individuals are injured as a proximate result, such tortfeasors are liable to the injured persons even though the corporation may also be liable. . . . [Citations.]" (*Price* v. *Hibbs*, 225 Cal.App.2d 209, 222 [37 Cal.Rptr. 270].)

The case of *Wise* v. *Southern Pac. Co.*, 223 Cal.App.2d 50 [35 Cal.Rptr. 652], relied on by defendants and by the court below, involved the situation, not here present, where the corporate defendant was charged with breach of contract and with conspiring with its officials and agents to breach that contract. The court applied the familiar rule that corporate officers are privileged to participate in their representative capacities in the breach of a contract by their corporate principal. (*Lawless* v. *Brotherhood of Painters,* 143 Cal.App.2d 474 [300 P.2d 159]; *Ballantine, Corporations,* (Rev. Ed. 1946), § 112, pp. 275-276.)

 Concerning the six remaining individual defendants of defendants Forest Lawn, the court below correctly concluded that the evidence as it respects them did not raise a triable issue. To establish a cause of action against these six, required evidence that they intentionally interfered with plaintiff's business relationship. (See *Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 37 [112 P.2d 631]; *Rogers* v. *Grua, supra,* 215 Cal.App.2d 1, 8.) As the court in the *Imperial Ice Co.* case stated (at p. 37): "The act of inducing the breach must be an intentional one. If the actor had no knowledge of the existence of the contract or his actions were not intended to induce a breach, he cannot be held liable though actual breach results from his lawful and proper acts. [Citations.]"

 No evidence was presented to controvert the statements of these defendants in their declarations filed in support of the motion for summary judgment. In the declarations each stated, he had no knowledge of the existence of any financial arrangement or agreement between plaintiff and defendants Bayly; he did not know nor had he ever heard of plaintiff (except for defendant Braunschweiger who had known him 20 years before); he had no communications with any person concerning a commission to be paid to plaintiff by defendants Bayly. Since uncontroverted, these statements must be accepted as true. (*Beck* v. *Reinholtz,* 138 Cal.App.2d 719, 724 [292 P.2d 906].)

The summary judgment for defendants Anderson, Braunschweiger, Eaton, Eilers, McLaughlin and Talbott is affirmed; as to defendants Blalock, Morrison and Llewellyn, the judgment is reversed.

Plaintiff shall recover his costs on appeal against defendants Blalock, Morrison and Llewellyn; defendants Anderson, Braunschweiger, Eaton, Eilers, McLaughlin and Talbott shall recover their costs on appeal against plaintiff.

Files, P. J., and Kingsley, J., concurred.