[Civ. No. 31793.   Second Dist., Div. Two.   Oct. 15, 1968.]

SONIA D. FRIEDMAN, Plaintiff and Appellant, v. CHARLES JACKSON et al., Defendants and Respondents.

Milton R. Gunter for Plaintiff and Appellant.

Eugene B. Shapiro for Defendants and Respondents.

HERNDON, J.—Plaintiff appeals from the judgment on the pleadings entered against her in her action seeking to recover damages sustained by reason of defendants' wrongful interference with her contractual relations. ■ Her appeal presents the following narrow question: May a defendant whose fraudulent acts and misrepresentations have caused another to fail to perform in conformity with promises made to his promisee under an oral agreement assert the statute of frauds as a defense against an action for damages brought by the promisee alleging defendant's tortious interference with a contractual relationship? We have concluded that this question must be answered in the negative. The judgment having been entered on the pleadings, the facts are not in dispute.

Plaintiff's complaint alleges that she is a licensed real estate broker. During the month of July 1963, she and the ''owners'' of certain real property ''entered into an oral agreement under the terms and conditions of which 'Owners' agreed to and did employ plaintiff as a real estate broker to obtain and procure a purchaser for [their] real property and improvements for which 'Owners' promised to pay to plaintiff a commission of 5 percent of the selling price thereof; . . .'' During the term of this agreement she ''did meet with and show'' the property to some 14 prospective purchasers, including defendants.

Plaintiff's complaint further alleges that following her initial contacts with defendants, they cancelled further scheduled appointments and falsely and fraudulently informed plaintiff that ''the property was 'too much money' '' and that they ''intended to take no further action with respect to inspection or possible purchases of said real property . . .'' However, immediately thereafter ''with full knowledge of the . . . agreement existing between plaintiff and 'Owners,' defendants . . . did fraudulently represent to 'Owners' that defendants . . . had learned that the subject real property . . . was on the market for sale through a 'friend' whose name was 'Mrs. Gold' and not through a real estate broker; . . .'' .

As a result of this intentional deceit defendants were able

to induce the "owners" to sell the property directly to defendants at a price which, at least inferentially, did not include plaintiff's agreed commission. It is further alleged that "plaintiff procured defendants . . . as the buyers of said real property and fulfilled all of the terms and conditions of said agreement between plaintiff and 'Owners' on her part to be performed, and were it not for the said acts and conduct of defendants . . . 'Owners' would have performed the terms and conditions imposed upon them under said agreement and would have paid to plaintiff the said commission upon the sale of said real property and improvements." Plaintiff prayed for general damages in the amount of her agreed commission and exemplary damages.

Although the reasoning of the trial court in granting defendants' motion for judgment on the pleadings is not revealed by the record before us, defendants concede that it was based upon the holdings in cases such as *Colburn* v. *Sessin*, 94 Cal.App.2d 4, 6 [209 P.2d 989], and *Sweeley* v. *Gordon*, 47 Cal.App.2d 381, 387 [118 P.2d 14].) However, these decisions stand only for the proposition that where the owner of real property, with full knowledge of the relationship of the parties, sells his property directly to the buyer with the preconceived intention of violating his oral contract with a broker and asserting the non-enforceability of such contract by reason of a failure to comply with the statute of frauds (Civ. Code, § 1624, subd. 5), the broker may not recover his commission from the owner or the buyer even though the latter may have "conspired" with the owner to achieve this end or "induced" him to assert the statutory bar. They do not reach the question whether or not a purchaser may be liable where, through fraudulent means, he has induced the seller to breach his contract.

"Since the instant agreement falls within the statute, it constitutes, without doubt, a voidable contract. Section 1624 of the Civil Code provides: 'The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: . . . 5. An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission. . . .' The courts have held that the word 'invalid' as used in the statute means voidable. [Citations.] Once a defendant raises the defense of the statute against the contract, the broker cannot recover upon it. [Citations.]

■ "The tort of interference with an advantageous relationship, or with a contract, does not, however, disintegrate because it relates to a contract not written or an advantageous relation not articulated into a contract. The nature of the tort does not vary with the legal strength, or enforceability, of the relation disrupted. The actionable wrong lies in the inducement to break the contract or to sever the relationship, not in the kind of contract or relationship so disrupted, whether it is written or oral, enforceable or not enforceable." (*Zimmerman* v. *Bank of America,* 191 Cal.App.2d 55, 57 [12 Cal.Rptr. 319].)

Although the court in *Allen* v. *Powell,* 248 Cal.App.2d 502, 506 [56 Cal.Rptr. 715], cites the *Zimmerman* decision, *supra,* for the proposition that the broker may always recover from the buyer of real property where the "prospective purchaser and the owner consummate the sale in such a way that they intentionally breach the agent's commission contract," the *Zimmerman* decision actually expressly refrained from reaching this point, i.e.: "It might be contended that in such a situation the umbrella of the statute could protect the buyer, who in reality stands in the same financial position as the seller. No such contention can be made as to the respondent bank, which was a stranger to the transaction. We are therefore not called upon to pass upon the issue whether the statute would or would not apply to a buyer in such circumstances as composed the cited cases [*Colburn, supra,* and *Sweeley, supra*] in which the defendant was a party to the transaction. We hold that the third party respondent, at least, cannot lay hold of the statute in the instant case." (*Zimmerman* v. *Bank of America, supra,* 191 Cal.App.2d at p. 61.)

■ Similarly, in the present case, we need not undertake a review of the earlier decisions of this court in *Colburn* and *Sweeley.* Whatever may be the rights and liabilities of a purchaser who encourages or "conspires" with a seller in the latter's knowing decision to avoid his obligation to a broker, a purchaser may not, by fraudulent means, cause a seller unwittingly to so change his position that thereafter he cannot reasonably be required to fulfill his oral commitment to his agent.

Drawing all reasonable inferences from plaintiff's complaint, the instant factual situation is essentially indistinguishable from that presented to the court in *Golden* v. *Anderson,* 256 Cal.App.2d 714, which the court described as

follows: (p. 718 [64 Cal.Rptr. 404].) "The basic underlying theory of plaintiff's action, is that the various defendants [the corporate purchaser and its agents] . . . interfered with the brokerage relationship plaintiff had with the sellers of the Bayly Ranch; that they did so unjustifiably and through fraudulent representations and concealment. In a nutshell, plaintiff alleges that defendants Forest Lawn 'did him out of his commission' by purchasing the property through an undisclosed principal, thereby concealing the fact that there was a broker involved, namely plaintiff, who had rendered services pursuant to an agreement with the seller in interesting them in buying the ranch.'' Passing upon the issue presented by the present appeal, the court in *Golden* stated at pages 718-719: ''Preliminarily, it is to be observed that although the brokerage agreement relied upon by plaintiff was oral, and thus subject to the defense of the statute of frauds [citation] which could be asserted by the seller of the property to defeat any action by plaintiff on the contract, defendants, being strangers to such contract, may not interpose that defense in this action which is founded in tort. [Citation.] '[C]ontracts which are voidable by reason of the statute of frauds, formal defects, lack of consideration, lack of mutuality, or even uncertainty of terms, still afford a basis for a tort action when the defendant interferes with their performance.' [Citation.] The rationale for the rule is succinctly stated in *Harris* v. *Perl* (1963) 41 N.J. 455 [197 A.2d 359, 363], in the following language: '[O]ne who unjustifiably interferes with the contract of another is guilty of a wrong. And since men usually honor their promises no matter what flaws a lawyer can find, the offender should not be heard to say the contract he meddled with could not have been enforced.' ''

The decisions in *Golden* and *Zimmerman* (cf. also *Shida* v. *Japan Food Corp.*, 251 Cal.App.2d 864, 867 [60 Cal.Rptr. 43]; *Di Lorenzo* v. *Stewart Title Guar. Co.*, 232 Cal.App.2d 839, 843 [43 Cal.Rptr. 261]; *Allen* v. *Powell, supra,* 248 Cal. App.2d 502, 506, and *Rogers* v. *Grua*, 215 Cal.App.2d 1, 8 [30 Cal.Rptr. 39]) are basically in accord with the rules enunciated in the Restatement of Torts. Section 766 thereof provides: ''[O]ne who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the

harm caused thereby." In comment (c) to this section it is stated:

"Clause (a) relates to cases in which the conduct induced or otherwise purposely caused by A constitutes a breach of B's existing contract with C. Separation of the situations described in Clauses (a) and (b) is not necessary for the statement of the general principle expressed in the rule stated in this Section; but the separation is necessary in determining the existence or non-existence of privilege in certain circumstances. The privileges to induce breach of contract are fewer than those to induce the conduct stated in Clause (b). . . . In the latter case the person induced is subject to a legal duty which the actor causes him to violate, while in the former case there is no duty. Moreover, in the latter case, the person harmed has paid consideration for the expectancy with which the actor interferes. An interest which is a sufficient basis for a privilege to induce a person not to enter into a business relation with another may, therefore, be insufficient to create a privilege to induce a breach of contract.

"The word 'contract' connotes a promise which creates a duty recognized by law (see Restatement of Contracts, § 1). A promise may be a contract though it is voidable (see Restatement of Contracts, § 13). . . . *A contract unenforceable because of non-compliance with the statute of frauds falls within Clause (a) rather than Clause (b) of the rule stated in this Section.*" (Italics added.)

In addition to the rarity with which a person will be entitled to cause another to breach a contract, as distinguished from merely inducing a refusal to deal, it is virtually never permissible to use fraudulent methods to effect another's conduct. As stated in Comment (b) to section 767 which defines the factors applicable in determining the existence of a privilege:

"The nature of the actor's conduct is a chief factor in determining whether the conduct is privileged despite its harm to the other person. . . . Under the same circumstances inducement by some means is privileged while inducement by other means is not privileged; and, likewise, the same means may be proper under some circumstances while improper in others. The issue is not simply whether the actor is privileged to cause the harm, but rather whether he is privileged to cause it in the manner in which he does cause it. The propriety of the means is not, however, determined as a separate

issue unrelated to the other factors. On the contrary, their propriety is determined in the light of all the factors present. Thus physical violence, *fraudulent misrepresentation* and threats of illegal conduct *are ordinarily improper means and subject their user to liability even though he is privileged to accomplish the same result by proper means."* (Italics added.)

The judgment is reversed.

Roth, P. J., and Fleming, J., concurred.